ELIZABETH MACKAY, Administratrix, &c., Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Where the defendant (a railroad company) has, by its own act, obstructed the view of travelers upon the public highway by piling its wood so that the approach of the train to the crossing cannot be seen until the traveler is upon the track, one who has driven upon the track with due care, and looked for the train as soon as looking could be of service, will not be deemed guilty of negligence in not first stopping his team to ascertain if a train might be approaching.

If in such case the traveler is killed or injured by a collision with the cars upon such crossing, the company will be deemed guilty of negligence, and held answerable therefor.

ACTION for damages for alleged negligent killing of the intestate by defendant, in December, 1864.

It appeared on the trial of the cause that, at the time mentioned, deceased was crossing defendant's track on a public highway in the town of Savannah, with his team and sleigh, from south to north, and an express train of defendant's coming from the west came in contact with and killed him.

There were obstructions on the west side of the highway of high ground, a building, and high piles of wood extending on both sides, so near to the track that the train could not be seen by deceased until his horses were on the track. His view to the west was entirely shut off until then.

When on or in the middle of the track, a train could be seen for some sixty rods west, but no further. At that point the road turned off and was obscured by high ground.

The weight of the evidence proved that a whistle had been sounded, if at all, at some distance west of the sixty rods, and not again sounded until just at the instant before contact with deceased, and then sounded for brakes.

There was a good deal of evidence by the plaintiff, from several persons in a condition to hear and to know, that the bell was not rung at all until after the injury occurred. Two of the employés of the company testified to ringing it, and

one of the plaintiff's witnesses swore that it first rung, as he heard, about twenty rods before coming to the deceased. The public highway at this place was ordinarily four rods wide, but it was so filled in with wood on each side, piled there near defendant's depot, that it was only about eighteen or twenty feet, or a little over one rod wide at the time of the accident.

No flagman was stationed at this crossing, and defendant's track crossed on the same surface over the highway. Defendant's engineer of that train testified that he " did not observe the team at all on the track until just at the time of the collision." The fireman said the same. He thought they got " closer than a rod or two " before he saw the team. He said the snow flew so that he could not see very well.

I think there was evidence sufficient to authorize a jury to find that the wood so piled in the road belonged to the defendant, and was put there for defendant's use and by its authority. There was a steam sawing machine directly on the north side of the track in operation there that day. " It made considerable noise," and the witness thought deceased could hear it.

It was proved by Remer, a witness called by defendant, that deceased could not see the track to the west until his horses got on the track; that when his horses did get on the track, he saw deceased turn his head as though looking west. At that point he " instantly " began to draw back his horses. The horses were frightened, sprang forward and escaped, and intestate was crushed and killed.

The witness, standing off some distance, spoke to deceased that the cars were coming, but it is quite clear that deceased did not understand him. He looked partly around, but not at the witness. Very probably he heard a voice, but not so as to understand any words. A witness standing still, half a rod further off, did not hear it. Deceased was slightly deaf, but could hear ordinary conversation when his attention was given to it.

The defendant's counsel moved for a nonsuit, on two grounds :

1. There was no negligence of defendant.

2. There was negligence of deceased.

The motion was denied, and under the charge of the court the jury found a verdict for the plaintiff. The judgment having been affirmed at General Term, the defendant has appealed to this court.

*Geo. F. Danforth*, for the plaintiff.

*James R. Cox*, for the defendant.

PECKHAM, J.   Two points were raised by the defense on the motion for a nonsuit—only one of them is insisted upon here.   It is not here urged that the defendant was not negligent.   It is quite clear that there was evidence enough to go to the jury as to the proper and timely ringing of the bell—as well as in regard to the continuous blowing of the whistle, as required by the statute.   There was a good deal of evidence of negligent omission as to both.   There was also evidence that the defendant had deprived the public in a large degree of the power of protecting itself from danger by these piles of wood and by its building, which prevented any one from seeing the danger until it might be too late.

But, as the point of defendant's freedom from negligence is not now urged, there is no occasion for its discussion.

Then, was the deceased guilty of negligence contributing to his death?

This train was running from thirty to thirty-five miles the hour.   At thirty-five miles, it ran over three rods in a second. He drove slowly and carefully up to the point where he could first see on the track to the west, and then he looked and "instantly" did all he could to hold back his horses — all in vain.   It should be remembered that he looked the first instant that looking could be of any benefit.   We may safely say that he heard no whistle or bell.   Seven witnesses, at least, within three rods of him, and some much nearer, were in like condition, hearing neither bell nor whistle, viz.: Mrs. Hooper, David Harrington, Isaac Cook, Sherman, Terry, Harriet Cook, and James Harrington.   It is

stated in defendant's brief, that the last witness heard the bell. On looking over his testimony, it is not found there. He heard the whistle to brake just before deceased was struck—not the bell at all. There was a high wind, considerable noise from the steam sawing machine, the snow was blowing, and it was, no doubt, difficult to hear the cars in that narrow defile. It may safely be said that deceased did not hear the cars, nor any indication of their approach. Any twelve fair-minded men would so find the fact, under the evidence in this case. There is no evidence that he intended to commit suicide. The counsel for the defense does not intimate that deceased had any such intent. He was an industrious, sober man, and intended to be careful. He risked his life on his care here, and erroneously deemed it safe.

It was urged by the defendant's counsel that deceased was guilty of negligence—that he ought to have been careful to look and listen, &c.; but he failed to show in what respect deceased was careless. All authorities say he must be careful. The deceased was so here. He drove carefully, and he looked the first instant that looking would be of service. What did he omit to do? It was well observed by the learned justice who gave the opinion in this case at General Term, that no case had gone the length of holding "that a person approaching a railroad crossing was bound to stop his team and wait till he could ascertain whether a train was coming, or to leave his team and go and look up and down the track, or the law would hold him" negligent.

But if he had done that even—if he had tied his team and gone and looked up and down, it would not have afforded him the least protection. In less than twenty seconds from his looking, the train would, or might have been, upon him. He could see but forty rods—the train ran that in less than twenty seconds—and he must have used more than that time in returning to his team and getting under way. Is it said he should have left them untied? If he had, and they had moved on and been run over, the cars thrown off the track

and other damage ensued, he would have been justly chargeable with negligence.

Again, I ask, what did the deceased omit to do that made him negligent? The omission is not, and I think it cannot, be stated. The deceased had as clear a legal right to travel over this road as the defendant had. He was bound to exercise the care in doing so that people in general would exercise under like circumstances. If he exercised that care, as I think, under the circumstances, he did, and was unable to cross safely, the defendant is liable.

The great difficulty of crossing had been caused by the defendant itself in erecting the building and piling up the wood so as entirely to obstruct the view. Deceased is then charged with negligence in not seeing where defendant's own wrongful act had put it out of his power to see. The act was wrongful, as defendant had no right thus to fill up the road with wood.

Thus far I have said nothing as to the submission of this case to the jury. If there was any doubt as to the credibility of any witness, as to the inference to be drawn from any fact, or as to the evidence to prove a fact, then it was, of course, a question for the jury. In my opinion, there was nothing in the conduct of deceased on which to base a charge of negligence. At this point I turn to the opinion of the learned justice who dissented at General Term, to learn what the deceased omitted. It is there said, " it was his duty to have looked both ways upon the track before he attempted to cross."

In this case it was not material for him to have looked east, as no danger came from that direction. He did look west on the track the instant he could do so — the instant he could see on the track. He fully complied in spirit with the requirement of the learned justice. If this action, under these circumstances, cannot be maintained, then the citizens have no legal right to travel on this public road. It is worse than idle to call that a right, which may be violated or destroyed with impunity.

I am quite aware of the late tendency and course of judicial decision in this State, to assume the province of jurors

in cases of negligence charged upon railroad companies, entirely at war, in my opinion, with the well-settled doctrines of the common law. I would not go further in that direction. No case can yet be found that would have warranted the court to nonsuit this plaintiff. For the honor of the law, as well as from considerations of sound policy and the impartial administration of justice, I trust there never will be.

Is there not some defect in the laws, or in their administration, when so many lives are sacrificed—so many human beings killed annually at these crossings? Does any public necessity or public benefit require this destruction?

If courts may be swayed by considerations of public policy, is it not their duty, as it should be their inclination, to diminish this loss of life, if their decisions can have that tendency?

The counsel for the defense intimated that, if this action was sustained, others would be induced to drive recklessly on the track and endanger the lives of passengers in the cars.

Human experience furnishes no ground for such an intimation. It is entirely idle. What a man will not do to save his life, no forfeiture of goods or penalties that law can inflict will make him do. He will adopt all the precautions he deems appropriate to protect his life. Human penalties can make him do no more. They cannot change man's nature. Hence, rules for his government should be adapted to the actual man, as he is. You do not expect the same care and caution from the mass of ignorant laborers that is exercised by educated, grave philosophers. The mass of men would never exert it, and the law that requires it would be absurd.

He should be called upon for such care only as a man in his situation and condition in life would ordinarily exert under like circumstances. Does not a juror know what that is, as well as a judge? The ignorant and the unwary are entitled to the protection of the law, as well as the wise and the educated.

There is very little justice in depriving a man of his life for not exercising more care than his capacity will allow him to exert. The most cautious and thoughtful are sometimes

absorbed by their business, their cares, or their griefs; and thus they cannot exert their usual caution.

What is the remedy? While all proper care should be demanded from the public, the protecting vigilance should be required from railroads. It is all in their power. They are authorized to cross a public road above or below its surface. Why should they not do so, and thus avoid all peril to travelers on the highway, as well as to their own passengers?

They should employ competent, vigilant men on their train, who would watch and warn of danger, ring the bell properly and sound the whistle, and yet watch and see at these crossings that the track was clear. They can always effectually do so, if the track be sufficiently free from obstructions to its view; and it is the duty of the railroad to see that it is free.

Let it be held, as the defense contends for in this case, that no amount of negligence of the railroad can make it liable for killing a man at a crossing, and the negligence will increase with entire certainty. What matters it to them whether the bell is rung, if no liability follows from its omission, no matter what the damage? Reckless indifference to their duties to the outside public, in the employés of the road, is thus encouraged and sustained, and loss of life the certain consequence.

They may omit to ring the bell entirely, and the railroads may, as they did here, obstruct the view for their own accommodation, so that the traveler, look all he may, cannot see the danger till too late to escape; and what protection has the public in the exercise of its conceded right to cross a public road?

It is urged that deceased must have known that this train was due. There was evidence that he lived within about two and a half miles of this depot; that the time-table had been altered within a month; and he had been drawing wood to the depot only for one day. There is no high degree of probability that a laboring man, like deceased, had any accurate information on that point, unless his business necessarily required it. If that were a material point, certainly, under the evidence, it was a question for the jury.

The train was not far from its regular time; the witness

thought it a little behind, but he thought not as much as fifteen minutes. Deceased might have supposed it had passed, if he knew its regular time for passing; but, in all probability, he then had no certain knowledge of the actual time. Such a man would scarcely have a watch. In my judgment, this point as to time is entitled to very little consideration.

I think the court committed no error in its refusal to charge. The charge substantially accorded with most of the requests, and there was no legal propriety in calling for a repetition in other language; nor did it impose any obligation upon the court to make such repetition. Where the requests differ from the charge, I do not think the court erred in refusing to grant them.

There is no reported decision in this State, that I have seen, not in harmony with the maintenance of this action. Principle and public policy also sustain it.

The judgment should be affirmed.

Concurring, PORTER, WRIGHT, SMITH and HUNT, JJ.

MORGAN, J., read an opinion for reversal, in which DAVIES, Ch. J., and LEONARD, J., concurred.

Judgment affirmed.