## PEARCE v. HUMPHREYS et al.

*(Circuit Court, E. D. Michigan. March 12, 1888.)*

RAILROAD COMPANIES—LIABILITIES FOR NEGLIGENCE—ACCIDENTS AT CROSSINGS.
  Plaintiff was driving a truck along a private way through defendant's yard, which was commonly used by teams in going to and from an elevator, and which crossed a large number of railway tracks. His view of the main track used by passenger trains was obstructed by a line of freight cars standing upon the next track, which had been opened at the crossing of the private way to form a passage for teams to cross the tracks. Plaintiff was about to cross the main track. He did not stop, but listened for the approach of trains. Hearing no signal, he attempted to cross, but was struck by an engine which had just left the passenger station, and was proceeding at a speed of 10 or 12 miles an hour. There was evidence that there was no signal given of its approach. *Held*, that the question respectively of the negligence of the plaintiff and defendants was properly submitted to the jury.[1]

*(Syllabus by the Court.)*

[1] On the general subject of the duty of a traveler approaching a railroad crossing, see Durbin v. Navigation Co., (Or.) 17 Pac. Rep. 5, and note. As to the duty of railroad companies at crossings, see Railroad Co. v. Schuster, (Ky.) 7 S. W. Rep. 874, and note.

On Motion for a New Trial.

This was an action by Herbert Pearce, for personal injuries received in the yard of the Wabash Railway Company in Detroit, of which company the defendant Solon Humphreys and another were the receivers. Plaintiff was the driver of a pair of horses attached to a heavy truck, which he had driven into defendant's yard to deliver some tobacco at the freight depot. A surveyed plan of the yard produced in court shows it to be a parallelogram; upon the north side of which is Woodbridge street, the east side Twelfth street, and the south side the Detroit river. The freight depot at which the tobacco was delivered was in the south-easterly corner formed by Twelfth street and the river, and access to the depot is afforded by a drive-way leading from Twelfth street along-side the freight house. The yard extends to the west some 2,000 feet, with some 20 tracks, and near the westerly end, and about 1,700 feet from the freight-house, there is an elevator, and a private way leading northerly from the elevator across the tracks to Woodbridge street, this way being nearly parallel with Twelfth street, and about 1,700 feet distant. Freight cars standing upon the tracks are opened at this private way, which was used solely for the convenience of persons doing business at the elevator, and was maintained by the elevator, and not by the railway. Plaintiff drove into the yard by the way of Twelfth street, delivered his freight at the freight house, but instead of turning about and coming out by the way he came in, drove westward through the yard, parallel with the tracks, until he reached the private way running from the elevator northerly to Woodbridge street, when he turned northerly upon this road between the cars of a divided freight train, and, while passing across the main track, was struck by a locomotive coming down from the passenger station, which was also upon Twelfth street. He did not stop before crossing the track, but listened as he approached it. The evidence tended to show that he could not have seen a train coming down from the station if he had stopped, by reason of the intervening line of freight cars.

Plaintiff recovered a verdict for $500, and motion was made for a new trial, upon the ground that the accident was the result of his own negligence. The case was argued before the circuit and district judges.

*Israel T. Cowles* and *Isaac Marston*, for plaintiff.

*Alfred Russell*, for defendants.

BROWN, J., (*after stating the facts as above.*) The testimony leaves no doubt in my mind that plaintiff was guilty of negligence in not returning to Woodbridge street by way of Twelfth street as he had entered. It was not only the proper and safer route, but it was actually shorter than the one he took; and if, in driving along parallel with the railroad tracks, and before reaching the private way to the elevator, he had met with an injury, I should have regarded his taking this route as contributing to the accident; but as he met with the injury after he had reached and taken the private way from the elevator, I do not feel at liberty to inquire how he came there. In other words, his negligence had ceased

to operate before he crossed the track, and cannot therefore be considered as the proximate cause of the accident. Applying the rule laid down in *Railroad Co.* v. *Kellogg*, 94 U. S. 469, it does not appear to me that the injury was the natural and probable consequence of this negligence or wrongful act, or that it ought to have been foreseen in the light of the attending circumstances. From the moment he reached the private way and turned northward, he was as much entitled to be protected against the negligence of the company as if he had originally started from the elevator. The case of *Daniels* v. *Ballantine*, 23 Ohio St. 532, is an excellent illustration of this principle. In that case a tug which had taken a barge under an agreement to tow her from Saginaw to Buffalo, delayed unnecessarily in the St. Clair river. After resuming her voyage the barge was lost in Lake Erie. Although it was shown that if the tug had not delayed the loss would probably not have occurred, the court held that the deviation was not the proximate cause of loss, although it would have been otherwise, if the loss had occurred during the deviation. Other cases of a similar character are *Railroad Co.* v. *Reeves*, 10 Wall. 176; *Morrison* v. *Davis*, 20 Pa. St. 171; *Denny* v. *Railroad Co.*, 13 Gray, 481.

The main questions in this case are—*First*, whether there was negligence on the part of the engineer in proceeding too fast, and in failing to ring his bell; and, *second*, whether there was contributory negligence on the part of the plaintiff in crossing the track without using sufficient care to ascertain whether there was a train approaching. The road upon which the accident occurred, though within the yard of the defendants, was a well-recognized way from the elevator to Woodbridge street, laid out, cindered, and planked, and in constant use by teams going to and from the elevator. If not originally designated and laid out by the railroad company, it had been done with the consent of its officers, and they were accustomed to open their trains at the crossing of this road, so as to leave a free and unobstructed access to the elevator. At the time the accident occurred, the track next south of the one on which the plaintiff was injured was occupied by a line of freight cars, which had been opened at the crossing of the road just wide enough for teams to pass. The view towards the station from which the locomotive started was concealed, or at least obstructed, by this train of cars. Under these circumstances, I do not think that plaintiff can be considered as a trespasser in making use of this road. *Delaney* v. *Railway Co.*, 33 Wis. 67. And defendants were bound to the exercise of ordinary care and prudence to make their premises safe for the use of teams. Cooley, Torts, 607; *Bennett* v. *Railroad Co.*, 102 U. S. 577, 585; *Railroad Co.* v. *Stout*, 17 Wall. 657; *Elliott* v. *Pray*, 10 Allen, 378. Now, while there is no *statutory* obligation to ring a bell at a crossing within the company's yard, I consider it a question for the jury whether, in this case, there was due care exercised in running this locomotive at a speed of 10 to 12 miles an hour behind this line of freight cars, and crossing this road without giving any notice of its approach. I understand that where the view of the track from a highway is obstructed, or when, for any reason, there is difficulty

in seeing an approaching train, this is a circumstance which demands of the engineer the exercise of increased vigilance. Beach, Cont. Neg. 200. The existence of the road, and of its constant use, and the fact that a team might approach the track from the southward, where the view of the main track was obstructed, were well known. A locomotive moving at the rate of 10 miles an hour might not of itself make sufficient noise to attract attention, and I think it is not demanding too much of the company to require either that the engineer proceed at a very low rate of speed, or ring the bell while approaching this road; at least it was a question for the jury, and they have found this fact adversely to the defendants.

I also think the question of contributory negligence was one for the jury. Plaintiff says he listened for the train as he approached the track, but heard nothing. Had he been on foot, I should have held without hesitation that it was his duty to stop and look before crossing the track. *Pzolla* v. *Railroad Co.*, 54 Mich. 273, 20 N. W. Rep. 71. He was, however, driving a team of horses. If he had stopped before the horses reached the track, it is at least doubtful whether he could have seen anything, owing to the intervening line of freight cars, and while so standing still would have been exposed to injury from cars passing upon tracks to the southward of the main track. It would evidently have been of no avail to stop after the horses had begun to cross the track. It is difficult to see what more he could have done, unless it was to get out of his wagon, and go forward on foot for the purpose of looking; but this he was not obliged to do, particularly in view of the fact that he would have had to leave his team standing upon the track south of the line of freight cars. It is true, it was held in the case of *Railroad Co.* v. *Beale*, 73 Pa. St. 504, that if a traveler cannot see a track by looking out of the carriage he should get out and lead his horse, but I think this case is opposed to the great weight of authority, and particularly to the cases of *Mackay* v. *Railroad Co.*, 35 N. Y. 75, and *Davis* v. *Railroad Co.*, 47 N. Y. 400. The circumstances may be such as to require a driver to stop his team and listen,—as where a highway is approached through a deep cut obstructing the view,—but I do not think that applies to a case of this kind, where the plaintiff is crossing a large number of tracks laid close together, and where a train is liable to approach at any moment upon either one of them. Upon the whole, I think the question of the respective negligence of the two parties in this case was properly submitted to the jury, and that a new trial should be denied.

JACKSON, J., (*concurring.*) While this is a close case, I am of the opinion that the facts do not disclose such a clear case of negligence on the part of the plaintiff as to warrant the court in taking the question of negligence from the jury, or in holding as matter of law that the plaintiff could not or should not recover for the injury sustained. His injury was not an unavoidable accident. It was clearly the result of negligence; but, under the facts and circumstances of the case, the trial judge could not properly say, as matter of law, that the negligence which caused the

injury rested with plaintiff solely or chiefly, or to such an extent as to defeat his right of recovery. The roadway on which he was driving was known to and its use sanctioned by the defendants, and to cross that roadway at such a rate of speed as 10 or 12 miles an hour without giving any signal or warning of the approaching train, was not the exercise of reasonable and proper care on the part of defendant's employes in charge of such train. Whether this failure to exercise proper care in crossing this roadway, or the plaintiff's want of proper caution in crossing the track, caused the injury, was, under the facts of the case, a question of fact to be determined by the jury. I concur with the learned district judge in the opinion that the question of negligence was properly left to the jury, and in the conclusion reached by him that there should be no new trial in this case.