SOLOMON WEISS, RESPONDENT, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, APPELLANT.

Submitted March 20, 1908—Decided June 8, 1908.

1. In an action for injuries to a plaintiff in a railway crossing accident the evidence was insufficient to establish the failure of defendant's servants to blow a whistle or sound a bell as required by the statute.
2. The evidence was conclusive that from the point where the plaintiff testified he stopped, looked and listened, before he started to cross the track, the train was visible, and the plaintiff was negligent.

---

On appeal from the District Court of Perth Amboy.

Before Justices REED, PARKER and VOORHEES.

For the appellant, *George Holmes.*

For the respondent, *Joseph E. Stricker.*

The opinion of the court was delivered by

REED, J. This is an appeal from a judgment in the District Court in the city of Perth Amboy.

The action is to recover damages caused by a collision between a train of the defendant and a wagon of the plaintiff. The collision occurred at a point where Woodbridge avenue crosses the Sound Shore branch of the defendant's railroad, in or near the village of Carteret, Middlesex county.

The plaintiff says that between eleven and twelve o'clock in the forenoon of the 10th day of December, 1906, he approached the railroad track, and when the horse was within five feet, and he, sitting in his wagon, was within fifteen feet of the track, he stopped and listened for a bell, and not hearing any signal, he drove on across the track, and when nearly over the rear of his wagon was struck by a train, which demolished his wagon and threw him out and injured him.

The negligence charged against the defendant is that no whistle was blown, nor bell sounded, in accordance with the statutory requirements. The plaintiff says he heard neither whistle nor bell, but it is in evidence that he had his coat collar turned up, and that he wore a cap with ear-lappets. It is also obvious that he was relying, not upon a whistle or bell upon an approaching engine, but upon a stationary bell at the crossing, for he says he stopped and looked and listened for the bell, because generally on a crossing is a bell with a signal that rings.; and "he did not hear no bell ringing."

His testimony is purely negative, and his attention was obviously diverted from listening for an engine signal.

There was another witness for the plaintiff who was riding in the smoker of the train that collided with the wagon, but he merely says that no whistle was blown, as he knows, and he does not remember whether or not he heard a bell ring.

The remaining witness is a Mr. Donovan, who says he was approaching this crossing in an opposite direction on the same highway that the plaintiff was traveling. He says he was one hundred and twenty-five feet from the railroad track, and saw the train at Leibig's woods, and Leibig's woods, he says, is about five hundred feet away. He says at the time

he saw the train he also saw the plaintiff approach the track, and stop, look and start off again. He also says that he heard no bell nor whistle, and that from the place where the plaintiff stopped his vision in the direction of the approaching track was obstructed by a bank three and one-half feet high, upon which were bushes nine feet high. Witness' position, therefore, at the time of the occurrence, was forty-two feet from the track on one side of the railroad. He saw the train approaching within two hundred yards of the crossing, and he saw the plaintiff with his horse stopped at a point from which he, the plaintiff, could not see the track and must rely upon signals. Yet, he says he gave no warning to the plaintiff. His reason for failing to warn the plaintiff was that it was none of his business, and that he was not a flagman, and, again, that he was too far away.

The last reason was absurd, for he was only one hundred and twenty-five feet away, and the first reason is brutal, if it be a fact that he saw the train so near, sounding no warning signals, and invisible to the plaintiff. If the engine bell was ringing, his failure to warn the plaintiff is explicable.

On the other hand, the engineer testified that the bell rang continuously from the time the train left Chrome, about a mile from the crossing, until it struck the wagon of the plaintiff. He says the bell was rung entirely by air, automatically; that there was another crossing between Chrome station and this crossing, and so the bell was kept ringing, and that he distinctly remembers shutting it off when the train stopped, after the accident.

The conductor says the bell was ringing from Chrome, and when they stopped the train after the accident, the engineer shut the bell off.

Two brakemen swear that the bell was ringing until it was shut off, after the accident.

Mr. Gorke, who is a section foreman for the defendant, was at the second crossing in Leibig's woods, which is about three hundred to five hundred feet from this crossing. He says he heard the bell from the time the train started from Canda station, which station is between Chrome and this

crossing, and that it continued to ring while passing him, and that the whistle blew right in front of him. After the train stopped, he ran down with his gang and saw the upset wagon.

Mr. Smith was a passenger on the train. He boarded the train at Chrome, and says his attention was first directed to the bell by its ringing at Canda, and that it continued to ring until after the train passed this crossing.

So the affirmative testimony is of the most convincing kind that the bell rang automatically during the statutory period, and there is nothing to contradict this testimony except the "I did not hear it" of the three witnesses for the plaintiff. As against positive affirmative evidence of credible witnesses to the ringing of the bell, there must be something more than the testimony of one or more that they did not hear it. It must appear that their attention was called to the fact. *Culhane* v. *New York Central Railroad Co.*, 60 *N. Y.* 133.

For the reasons already given, we think the testimony of the plaintiff and his two witnesses is unreliable and negative, and that the testimony of the defendant's witnesses upon this point is so overwhelming that a verdict should have been directed for the defendant.

But again we think that the plaintiff himself was guilty of contributory negligence. As already remarked, his testimony is that he stopped and looked and listened when five feet from the track of the defendant's railroad, and when he, sitting in the wagon, was within fifteen feet of the road.

Regardless of the testimony in the case which shows that the track could be witnessed at various distances from the track while traveling in a wagon along Woodbridge avenue toward the crossing, the testimony seems to be conclusive that at the point where the plaintiff says he stopped and looked and listened, the train must have been visible when he started to drive across the track. The distance from this crossing to Leibig's crossing, according to the scale of the map used, is five hundred and forty feet, and between those points the railroad track seems to be curveless. The distance from the warning sign upon Woodbridge avenue to the railroad track, by the same scale, is thirty to forty feet. It is clear from the

map, and not refuted by the photographs, that when the plaintiff reached the warning post, neither the bank nor the bushes along the road were so placed as to obscure his view down the railroad track, certainly as far as Leibig's crossing. The plaintiff stopped between the warning post and the track. While still there, and before he started to drive across, the train must have been visible between Leibig's crossing and Woodbridge avenue crossing.

The train, by the testimony of the engineer, who says they lacked steam, and by another witness, was running slowly, not more than ten or twelve miles an hour. The plaintiff must have traveled not more than forty feet before the rear of his wagon was caught by the engine. Assuming, by a moderate assumption, that his horse was walking at the rate of two miles an hour, the train would have run during the period he was traveling forty feet, only two hundred and forty feet; therefore, the train, when he started, must have been about half way between Leibig's woods crossing and the Woodbridge avenue crossing, and entirely visible to the plaintiff.

On both of these grounds we think there should have been a direction for a verdict for the defendant.