PHILADELPHIA, BALTIMORE AND WASHINGTON RAILROAD COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, vs. ROBERT L. BUCHANAN, plaintiff below, defendant in error.

1. NEGLIGENCE—ACTIONS—QUESTION FOR JURY.

In an action for injuries, if there is any evidence of negligence on which the jury can properly find a verdict, or if the conclusion to be drawn therefrom is debatable or rests in doubt, though the facts are undisputed, or if the evidence is conflicting in regard to any material fact, its determination is for the jury.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

The burden of establishing contributory negligence, whenever relied on as a defense, is on the defendant, though proof of such negligence may arise out of plaintiff's testimony in the first instance.

3. Negligence—Contributory Negligence—Question for Court or Jury.

Where it clearly appears that there was contributory negligence proximately entering into and contributing to the accident at the time it occurred, it is the court's duty to so find as a matter of law.

4. Railroads—Crossings—Dangerous Place.

A railroad crossing is a place of danger as a matter of law, its very presence being notice to a person approaching or attempting to cross it of the danger of colliding with a passing engine or train, and imposes on him the duty to exercise reasonable care and caution, and to at least look and listen before crossing.

5. Railroads—Crossing Accident—Contributory Negligence.

Failure of a railroad company to sound the alarm on approaching a crossing, as required by statute, will not excuse the contributory negligence of a person injured by driving on the crossing in front of the train without looking, where the liability to a collision is great.

6. Railroads—Crossing Accidents—View of Track—Obstructions:

That the view of a railroad track on approaching a crossing is obstructed will not relieve the traveler from the obligation to look and listen for an approaching train, whether regular or special; the very fact of the existence of the obstruction, and particularly when known to the traveler, imposing the duty to exercise additional care and caution for his own protection.

7. Railroads—Crossing—Care Required.

Where a traveler approaches a railroad crossing, both he and the railroad company are charged with the same degree of care, the one to avoid inflicting injury and the other to avoid being injured, the care of each being commensurate with the risk and danger involved; and when it is known to the traveler and servants of a railroad company that a crossing is very dangerous by reason of its surroundings, it is incumbent on both parties to exercise additional care and caution.

8. Railroads—Crossing Accidents—Contributory Negligence.

Plaintiff, while driving a single horse attached to a covered delivery wagon, was run into by defendant's railroad train about 1 o'clock in the afternoon of the day of the injury at a crossing with which he was familiar. Plaintiff's view of the tracks from the north of the crossing, in the direction from which the train approached, was wholly obstructed, except at a lane some distance from the crossing and at a point 19 or 20 feet therefrom. Plaintiff looked through the lane as he passed it, and saw the railroad for the length of about 30 feet, but saw no train. He then proceeded slowly, his horse at a walk, and at a point about 40 feet from the crossing stopped and listened, but heard nothing. He then continued, his horse still in a walk, and did not stop until the horse was struck by the engine. After he passed the lane it was not possible, because of the obstruction, to see the train until from his position in the wagon he was about 19 feet from the nearest track, when the wagon seat was 19 feet from the track and the horse's head was not more than 3 feet therefrom, and plaintiff had an unobstructed view of the railroad for 3,000 feet or more. Plaintiff testified that when he got to that point the train was right upon him. He gave the horse a sudden jerk with his right hand, and then the collision happened, after which he knew nothing. *Held*, that since it did not conclusively appear that plaintiff had the opportunity or ability to see the approaching train in time to avoid the accident, if he had exer-

cised due care by the use of his senses, he was not negligent as a matter of law.

9. TRIAL—REQUEST TO CHARGE—INSTRUCTIONS GIVEN.

Where, in an action for injuries at a railroad crossing, the court charged that it was plaintiff's duty to look and listen, and that he was negligent if he failed to do so, and that for any injury he received, which he could have avoided by the performance of such duty, he was without remedy, the court did not err in refusing to charge that if, as a person approaches a railroad crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look, and for this reason does not see an approaching train until it is too late to avoid a collision, and he is thereby injured, he is guilty of negligence.

10. RAILROADS—CROSSING ACCIDENTS—EVIDENCE.

In an action for injuries to plaintiff in a collision with a railroad train while he was driving across the track in a covered wagon, evidence of experiments made by a witness with respect to the points in the public road at which a train could be seen approaching the crossing was not objectionable, because the witness when he made the examination was on foot and not in a wagon, and because no train was approaching the crossing at the time, in that the conditions were dissimilar.

(*January* 18, 1911).

CURTIS, CHANCELLOR, PENNEWILL, C. J., and Associate Judges CONRAD and HASTINGS, sitting.

*Ward, Gray* and *Neary* for plaintiff in error.

*Albert Constable* and *Anthony Higgins* for defendant in error.

Supreme Court, January Term, 1911.

WRIT OF ERROR (No. 3, June Term, 1910) to Superior Court for New Castle County (No. 84, March Term, 1909, below). Action by Robert L. Buchanan against the Philadelphia, Baltimore and Washington Railroad Company, to recover damages for personal injuries to plaintiff, death of his horse, and injuries to his wagon, from an accident at a crossing. Judgment for plaintiff below affirmed.

The facts of the case and the assignments of error relied upon fully appear in the opinion. For report of case in court below, see 1 *Boyce* 83, 75 *Atl.* 873.

ARGUMENT OF COUNSEL FOR PLAINTIFF IN ERROR.

I.

*Upon the Facts.*

From the evidence it clearly appears that at a point nineteen feet from the nearest rail the plaintiff could see up the track

Argument.

toward Wilmington; to Porter's Station, a distance of about three-quarters of a mile. He looked up the private lane, about two hundred and fifty feet from the track. His horse was on a walk, and any view which he could have of the railroad at that point would avail him nothing as against a train running twenty-five to thirty miles an hour, so that we have a case of a man approaching a crossing in a wagon with the horse on a walk, with view obstructed, stopping and listening forty feet from the crossing, when the wind was blowing the sound of the train away from him, and where he could see nothing of the approaching train, and then going on at a walk past a point where, admittedly, he could see the approaching train for a distance of three-quarters of a mile.

Under the circumstances of this case, with his knowledge of the physical surroundings, was it not the duty of the plaintiff to approach the crossing with his horse under such control as to enable him to look when he could see an approaching train, in time to avoid accident? The Court must come to the conclusion that the plaintiff is not free from negligence contributing to his injury, where he passes a point of safety at which, if he had looked, he could have seen the approaching train, and that the use of his sense and hearing at a point forty feet away, under the circumstances of this case, did not absolve him from his duty to continue to listen and look as he approached the track. The duty to look and listen continues until the danger is past. We would call the court's attention briefly, to the fact that the evidence as to signals is in this case, as in most cases of this sort, on the part of the plaintiff, that the witnesses did not hear the signal, while on the part of the defendant there are positive statements that the signals were given.

The evidence of Sparks, a witness called for the plaintiff, is to the effect that he heard the whistle blow for Porter's Station, and that he heard the noise or rumble of the train while the train was coming toward the crossing. Sparks was out in the public road near his home, which is about a quarter of a mile from the crossing. The fact that Sparks could hear the train at that distance and the fact of which the court can take judi-

cial notice, that trains of that character do run with considerable noise should be taken into consideration in connection with the statement of the plaintiff himself, that he stopped forty feet away, listened and could hear nothing, and then walked his horse over the intervening space to the track and knew nothing of the approach of the train until he looked up and found it "right on him." While the plaintiff was covering a distance of forty feet to the track the train was probably running within a distance of four hundred feet (the train running at thirty miles, and the horse on a walk). It seems inconceivable that a man in the exercise of due care and caution, approaching a dangerous crossing, could be run into in the way testified to by the plaintiff. It is more consistent with the action of a man worn out with fatigue from labor and the heat of the day. Taking his story as true and placing upon it and upon all the testimony the most favorable construction to his case, we yet have a plain case of failure to make use of his faculties where such use would have been of avail.

The testimony of the plaintiff's witnesses is that at a point about twenty feet from the crossing the southbound train can be seen approaching. The question as to whether a certain place is the best place to stop might properly be submitted to the jury. But the question here is, not whether he should have stopped again, but whether the plaintiff was relieved of all further legal duty of care. The question is properly for the court.

## II.

### On the Law.

The important question under the assignment of errors relied on comes up on the first assignment, namely, that the court below erred in refusing to instruct the jury to find a verdict for the defendant.

Admitting the negligence of the railroad company, yet from all of the evidence, giving it the most favorable construction to the plaintiff below, it clearly appears that there was such contributory negligence as will bar recovery in this case.

The Supreme Court of this state in the recent case of *Railroad v. Reed*, 5 *Penn.* 227, declared:

"It is quite impossible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case."

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"If, however, it clearly appears from the evidence that there was contributory negligence, proximately entering into and contributing to the accident, at the time of its occurrence, it is the duty of the court to so find, as a matter of law." The facts in that case are somewhat different from the facts in this case, but the law as to the relative duties of the railroad company and the traveler is there so fully set forth as to render unnecessary any further setting forth of such law than a reference to this case. It is true, as is stated in the *Reed case*, that the court will examine the facts of a particular case and will, where the occasion warrants, decide, as a question of law, that the plaintiff is guilty of contributory negligence.

The first question is whether the plaintiff, having stopped and listened at a point forty feet from the track, where he could see nothing, is guilty of contributing to his injury by passing a point nineteen feet from the track where, according to the plaintiff's evidence, he could have seen, if he had looked, three-quarters of a mile in the direction from which the train was coming.

It is too well established as the law of this state to need citation of authorities that a person approaching a railroad crossing with which he is familiar, is bound to avail himself of his knowledge of the locality and act accordingly. If, as he approaches the crossing, his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look, and for that reason does not see an approaching train until it is too late to avoid a collision and he is thereby injured, he is guilty of negligence and could not recover therefor.

The difficulty in this case seems to grow out of the fact that the point at which the plaintiff was able to use his sense of sight was much closer than that in any case where the duty of the

traveler has been considered by the courts of our state.

In the case of *Lynam against the Railroad*, 4 *Houst.* 583, the plaintiff relied upon his knowledge of the time of the passing of the train and the absence of a headlight. The court there ordered a nonsuit on the ground that if they had looked or listened but an instant before they drove upon the track at the crossing they could have prevented the collision and the injury.

In the case of the *P. & R. R. Co. v. Peebles*, 67 *Fed.* 591, the facts are strikingly similar to the facts in this case.

It was as much Buchanan's duty in this case, as it was Peebles' duty in that, to look up the track as soon as his line of vision was open. When the familiarity of the plaintiff with the crossing in this case is properly considered, there would seem to be no escape from the force and effect of the *Peebles' case*.

In the case of *Railroad Company v. Lacey*, 94 *Va.* 446; 26 *S. E.* 834, the person injured stopped, looked and listened for the train several hundred feet away from the track and after that could only have seen up the track of the railroad at a point within twenty feet of the crossing. Yet for the lack of care in continuing to look and listen for the approaching train, when he might have looked and listened effectively, it was held that his failure to do this was contributory negligence.

In the case of *McClure v. the Railroad*, 41 *Pa. Sup. Ct. Reports*, 227, the driver of a team approaching a railroad grade crossing, stopped at a distance one hundred feet from the track, at a point where he could not see a train approaching. At a point sixteen feet north of the track there was a clear and unobstructed view of the track for at least a mile. After stopping at a point one hundred feet away he drove down and on to the track and was struck and injured. It was held that the evidence established the contributory negligence of the plaintiff's agent.

*Central Railroad of New Jersey v. Feller*, 84 *Pa.* 226; *Urias v. Penna. R. R. Co.*, 152 *Pa.* 326; *Myers v. B. & O. R. R. Co.*, 150 *Pa.* 386; *Corcoran v. Penna. R. R. Co.*, 203 *Pa.* 380; *Kinter v. Penna. R. R. Co.*, 204 *Pa.* 497; *Blotz v. Railroad Company*, 212 *Pa.* 154; *McMahan v. B. & O. R. R. Co.*, 223 *Pa.* 1.

In the case of *Shufelt v. the Railroad*, 96 *Mich.* 327, the

traveler who was driving two horses to a lumber wagon and who was familiar with the crossing, could have seen the train had she looked, when within twenty feet of the track. The court said:

"These trains must run where the view is obstructed by cuts, by embankments, by trees, and other things. He who does not choose to stop and listen, where he cannot see, must suffer the consequences of his own negligence."

In the case of the *Railroad Company v. Righter*, 42 *N. J. L.* at 181, the plaintiff was approaching a railroad crossing in his wagon. He stopped at a certain street and listened. He started on again and when within one hundred and twenty feet of the railroad he stopped again and pulled up his horses. He saw a train at a station some distance away and stopped and looked and listened, and hearing no bell started on again, and when he got upon the side track—the horses on the other track—saw the train come flying right into him. It struck the rear part of the wagon and the persons therein were thrown out and injured. The court said:

"I am unable to see any reason why, if he had used his eyes with any degree of care, he could not have seen the approaching train in time to arrest the progress of his carriage and avoid the collision. It was his duty to approach the track with caution, and to have his horses at such a gait and under such control as would allow him to arrest their movements at once.

In the case of *Walsh against Pennsylvania Railroad*, 222 *Pa.* 164, 70 *Atl.* 1088, the plaintiff was familiar with the conditions and surroundings existing at the crossing. She was driving a farm wagon and stopped a distance of forty-one feet from the center of the track on which the collision occurred, and looked and listened for an approaching train. At a distance of ten feet from the track on which the plaintiff was injured she had a view of one thousand feet. She went on to the track without looking, after having stopped forty feet away, and was struck while on the track. The court said:

"One may not determine for himself that point of observation, and because there he neither sees nor hears warning, advance heedlessly upon the tracks of the railroad, without incurring

Argument.

reàponsibility for any disaster that may ensue. The duty to be observant continues so long as danger threatens. If between the point where the party stops and the tracks of a railroad the situation affords opportunity to discover an approaching train, and injury results because of disregard of such opportunity, the original act of stopping cannot operate to relieve the injured party of contributory negligence. *Muckinhaupt v. Erie Railroad Co.*, 196 *Pa.* 213, 46 *Atl.* 364.''

In the case of *Leithead v. the Railroad*, 72 *Atl. Rep.* 453 (*Supr. Ct. of N. J.* 1909), the plaintiff was approaching a crossing at five o'clock in the afternoon in June, seated in an ordinary farmer's carriage with the curtains up. The road was crossed by a double track railroad. The plaintiff drove his horse at a walk upon the track. The horse was struck on the hip by the engine and the plaintiff killed. The court said:

"It further appeared that at a point in the highway twenty-four feet distant west from the nearest rail of the southbound track, and thirty-eight feet from the nearest rail of the northbound track, on which the train was moving, and from that point forward, there was an unobstructed view for more than a mile down the straight track in the direction from which the train was coming. It further appeared that there was nothing present to interfere with the free use of vision and hearing, nor to distract his attention. It thus clearly appeared that if the plaintiff's intestate had used his eyes, as he was legally bound to do, he would have seen the approaching train in time to have avoided the collision. His failure so to do was negligence which contributed to the collision, and the motion to nonsuit should have been granted. *Pennsylvania R. R. Co. v. Righter*, 42 *N. J. Law* 180.''

In the case of *Weiss v. the Railroad*, 69 *Atl.* 1087 (*Supr. Ct. of New Jersey*, 1908), the plaintiff, between eleven and twelve o'clock in the forenoon, approached the railroad track, and when the horse was within five feet and he sitting in his wagon, was within fifteen feet of the track,—he stopped and listened for a bell and not hearing any signal, he drove on across the track, and when nearly over, the rear of his wagon was struck by a train, which

demolished his wagon and threw him out and injured him. The court said:

"But again we think that the plaintiff himself was guilty of contributory negligence. As already remarked, his testimony is that he stopped and looked and listened when five feet from the track of the defendant's railroad, and when he, sitting in the wagon, was within fifteen feet of the road. Regardless of the testimony in the case, which shows that the track could be witnessed at various distances from the track while travelling in a wagon along Woodbridge Avenue, toward the crossing, the testimony seems to be conclusive that, at the point where the plaintiff says he stopped and looked and listened, the train must have been visible when he started to drive across the track."

In the case of the *Railroad Company v. the State to the use of Hickox*, 65 *Atl.* 434, (*Court of Appeals of Maryland*, 1906), the decedent stopped, looked and listened at a point thirty-five or forty feet from the track, where his view was obstructed by a pile of cross ties. After driving past the cross-ties and about fifteen feet from the track, decedent could have seen down the track for a distance, variously estimated, from two hundred to three hundred yards. But without again stopping or looking farther he attempted to cross the track. The court said:

"If by reason of the obstruction of the cross-ties he could not see down the track, he was required to exercise care when he got nearer the track, where he could see and certainly could have heard the train coming, if he was listening, for it is no excuse for one not to stop, look, and listen when he is near the track, because he did so further away, at a point where he could not see, if he looked, and according to the plaintiff's contention could not hear, if he listened. If his view was obstructed, and the sound interfered with, it made it all the more important for him to stop again."

In the case of *Southern Railway v. Jones*, 56 *E. Repr.* 155; 48 *A. & E. R. R. Cas.*, N. S. 728, (*Supr. Ct. of App. of Va.*, 1907) the court held:

"Where a traveler on a highway, after stopping and looking for an approaching train at a distance of 75 feet from a cross-

ing where he could not look down the track because of an obstruction, did not again look or listen until he was on the main track, where he was struck by a train, though for at least forty feet before arriving on such track he could have looked down the railroad a distance of over seven hundred feet, he was guilty of contributory negligence, precluding his recovery for his injury, even though the company was negligent in failing to sound a whistle as required by *Acts* 1893–1894, *p.* 827, *c.* 737."

The Court, in discussing the duty of the traveler in that case, said:

"It is a well established principle that the duty to look and listen imposed upon a traveler of a highway approaching a railroad crossing is a continuing duty, and, if there is any point at which, by looking and listening, a person injured, could have avoided the accident, then his contributory negligence defeats a recovery for the injury. If he could have seen and did not see an approaching train, then he failed to discharge the duty which the law imposes."

In the case of *Stokes v. the Southern Railway Company*, 104 *Va.* 819, 52 *S. E.* 855, the plaintiff stopped his wagon two hundred feet from the track. The train could be seen at a distance of sixty-five feet from the crossing for seventy-five feet, and when twenty-five or thirty feet from the track the train could be seen within one hundred to one hundred and fifty yards of the crossing.

The court said:

"The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective."

In the case of *Smith v. the Railroad Company*, 118, *N. W.* 638 (*Supr. Ct. of Wis.*, 1908), the plaintiff, who was driving a spirited team along a causeway fifteen feet wide and four feet high, down a slope approaching a railway crossing at an acute angle, knowing a train was due, stopped at a bridge where his horses' heads were about fifty-three feet from the railway track and looked and listened. He then proceeded to the crossing at a fast walk, and his attention was occupied with controlling his

team, which was prancing.   He did not look or listen again until his horses were actually upon the track where they were struck by an engine.   The court held that he was negligent, as a matter of law, in not continuing to look and listen until he reached the track.

In the case of *Philips v. the Railroad Company*, 111 *Mich.* 274, the plaintiff, who was deaf, drove upon a railroad track at a crossing without stopping to look for an approaching train.   His view was for the most part obstructed, first, by a dwelling house, then by some bushes, a hen house and a pile of ties.   The ties extended up to within six or eight feet of the railroad track.   The hen-house was about six feet high and the ties, at the utmost, were only nine feet high.   The plaintiff did not stop his horse, but drove along to a point past the pile of ties, when, looking westward, he saw the train approaching about seventy feet distant from him.   His horse was then upon the track.   The court said:

"He knew the track was there; was familiar with the road. He could not see because of these obstructions, and yet he did not stop or take any other precaution to ascertain if a train was approaching."   *   *   *   "The case, it seems to us, is one where the plaintiff was so manifestly guilty of contributing to his own injury that a recovery should not be permitted."

In the case of *Railroad Company v. Ackerman*, 144 *Fed.* 959, (*Circuit Court of App. 8th Circuit*, 1906), the deceased was twenty-three years of age, intelligent and in full possession of his faculties.   He was thoroughly familiar with the crossing.   His horse attached to the wagon, was gentle and easy to control. The accident occurred in the day time.   The deceased approached the railroad track.   At no time prior to the moment of collision was the horse moving at such speed as would have prevented the deceased from stopping him almost instantly.   The deceased could have seen the train four hundred feet when within a space of fifty feet from the track.   The court held that the plaintiff was not in a place of danger until it was too late to prevent the accident.   The negligence of the employees of the railroad company and that of the deceased was concurrent and continues down

to the very moment of the collision, and there is no room for the contention that the negligence of the latter should be regarded as a known condition, upon which the negligence of the former subsequently operated.   The request of  the railroad  company for a directed verdict should therefore have been granted.

In the case of *Gibson v. the Railroad Company*, 74 *Atl.* 589, (*Supr. Ct. of N. H.* 1909), the deceased, a bicycle rider, could have seen and avoided the accident by stopping within ten feet of the track.   The court held in this case that his negligence in failing to stop, contributed to his injury and barred his recovery.

In the case of *Smith v. the Railroad*, 87, *Me.* 343, the plaintiff was riding in a top buggy and stopped and looked and listened about sixty feet away from the crossing, then drove on without stopping to look or listen.   The court held that if the view is obstructed it is the traveler's duty to look and listen carefully. No neglect of duty on the part of the railroad  company  will excuse anyone, when approaching a crossing, from using his sense of sight and hearing where those senses may be available.   Citing 1 *Thompson Neg.*, 426.

In the case of *Harvey v. the Railroad*, 210  *Pa*  95, the plaintiff was driving in a one horse dray.   At eighteen to twenty feet away he could see at two hundred and fifty to three hundred feet.   Eight feet away he could see one thousand feet.   He drove on the track without looking at these points.   The court held that the duty to continue to look as he approached the crossing was not performed by looking in one direction where he could see in both.

*Granger v. the Railroad* 168 *Pa.* 266.

*Mankewitz v. the  Railroad*, 214 *Pa.* 387;  *Urias v. the Railroad*, 152 *Pa.* 326;  *Kinter v. Railroad*, 204 *Pa.* 497; *McKahan v. the Railroad*, 223 *Pa.* 1;  *Bistider  v.  the Railroad*, 224 *Pa.* 615.

In a note on page 188 of 54 *American and English Railroad Cases*, in addition to those cases cited above, will be found references to cases from Arkansas, Georgia, Kentucky, Utah, Indiana, California, Ohio, Minnesota, Massachusetts, and New York.   An examination of the cases there referred to will  demonstrate beyond all doubt, that the plaintiff below under the facts in the present

case was not entitled to have the question of his negligence submitted to a jury.

Mr. Beach in his work on *Contributory Negligence, 2 Ed. Secs.* 180 and 181, discusses the quantum of care required of a traveler about to cross a railway track.

A careful examination of the facts of the cases cited above will show that the courts have, in applying the prinicple that the traveler must exercise all his faculties in approaching a crossing, decided, as a matter of law, that the failure to exercise his sense of sight at a point where, according to the plaintiff's own testimony, he could have seen the approaching train, if he had looked, in time to avoid the accident, was a failure to exercise his faculties and such care and caution as the law requires, and that such failure will, as a matter of law, be considered negligence contributing to his injury and barring his recovery.

It would seem against all reason that the plaintiff could have listened at a point forty feet away from the track and could have proceeded to the point where his horse was about on the track without having seen or heard the train approach.

The application of the law as laid down in the *Knopf case* and the *Reed case* in our own courts, to the facts in this case, must lead us to the conclusion that the plaintiff in this case, was guilty of contributory negligence such as to bar his recovery.

Assuming, as we believe we can under the Delaware decisions, that the duty of a traveler is to exercise all his faculties until the danger is past and that it is his further duty to approach the crossing with his horse under such control as to enable him to use his faculties in time to avoid danger, the failure to look at any point howsoever near to the track, when looking would have resulted in avoiding the accident, is a failure to exercise the care and caution which the law requires of a traveler in such cases. If it is true that the duty to look and listen continues until the danger is past, as it must be under our decisions, the failure to look at any point is negligence contributing to the injury.

There is nothing to take this case out of the general rule except the short space in which, according to the plaintiff's testimony, he had a view of the track. Courts have recognized that

railroads must run their trains under such conditions as to present to the traveler obstructed views. To relax the general rule required of travelers under such circumstances is to increase, rather than diminish, the possibility of danger and accident to travelers.

The court below erred in refusing to instruct the jury as follows:

"If, as a person approaches a railroad crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look and for this reason does not see an approaching train until it is too late to avoid a collision and he is thereby injured, he is guilty of negligence and could not recover therefor."

It will probably be contended by the defendant in error that the charge of the court contains in effect the same statement of law as is contained in this prayer. The defendant below was certainly entitled, upon the failure to charge for the defendant, to have the court instruct the jury as to the particular duty of the traveler with respect to the facts proven in this case.

The court below erred in admitting testimony by Wilmer J. Falls, a witness produced on behalf of the plaintiff below, with respect to the points in the public road west of the railroad crossing at which a train could be seen approaching the crossing, where it appeared by his testimony that he was on foot and not in a wagon as was the plaintiff below in this case at the time of the accident, and where it further appeared that at the time of making his examination or test no train was approaching the crossing.

The witness said that he was on foot and at the time he made the tests there was no train approaching. Counsel for the defendant objected on the ground that the conditions were absolutely different, that a man on foot has not the same view that a man in a wagon has and that there was no train approaching. The courts of this state have heretofore uniformly held that evidence of tests or examinations cannot be introduced where the conditions are admittedly different. *Wilmington Candy Company v. Remington Machine Company*, 5 *Penn.* 550.

The court below erred in admitting testimony of the plain-

tiff below as to certain tests made by him subsequent to the time of the accident as to the points in the public road, west of the railroad crossing, at which a train could be seen approaching the crossing, where it appeared by the testimony of the plaintiff that at the time of the making of said tests no train was in fact approaching the crossing.

What has been said with relation to the third assignment applies with equal force to the fourth assignment.

### ARGUMENT OF COUNSEL FOR DEFENDANT IN ERROR.
#### I.
#### *Upon the Facts.*

Substantially the argument for the plaintiff in error is that it was positive negligence on the part of the plaintiff below to fail to look and see the approaching train, because at a distance of nineteen feet from the southbound rail a clear view up the track, disclosing the approaching train, could have been had; that this constituted negligence not so uncertain as to require the facts to be submitted to the determination of the jury, but so perfectly clear and explicit that the court was bound, as a matter of law, to decide it without leaving it to the jury.

The best evidence in the case is not that the distance in question was not nineteen feet. Mr. Falls, surveyor, testified for the plaintiff, that he measured the distances, and speaking from his measurements, that the "point where you would first come to a clear view of a train coming from the north, was about twenty feet from the center of the southbound track."

Since the width of the track is four feet eight inches, the center would be distant from the rail two feet four inches, leaving the point in question distant from the westerly rail seventeen feet eight inches.

It is true that Buchanan testified that he measured the distance and made it nineteen feet, though he was testifying as a witness and is not estopped because he is the plaintiff from relying on the testimony of Falls, who, as a surveyor, is clearly the better witness.

Buchanan testified that he measured a similar horse and

wagon, and found the distance from the horse's head to where he was sitting in the wagon to be sixteen feet, so that if the case was to be decided by the testimony on this point, it would appear that there was evidence which the jury could believe and sufficient to sustain their action before a Court of Error, that when Buchanan reached the point where he could see the approaching train, the head of his horse was distant from the rail one foot, seven inches.

The court will take judicial notice that the engine and cars are all wider than the track, so that the position, which counsel for plaintiff in error have to maintain is that it was negligence in the plaintiff below, demanding his nonsuit, that he did not actually see in time to avoid the collision and injury, the train, when, if he had stopped at the point where it is claimed he could see the approaching train, his horse's nose would have touched the engine.

Buchanan testifies—that having stopped not more than forty feet from the track, and long enough to listen and see that there was nothing coming, a reasonable length of time, he "spoke to the horse and he started to walk, and when I got to where I could see, the train was right there, and the first thing I saw was the train."

If this testimony stood alone with nothing to refute it, it would have to be accepted as the fact and though counsel for the plaintiff in error, insinuate to the contrary, there is nothing in it inherently improbable, but it receives from the testimony on behalf of the plaintiff in error singular, interesting and overwhelming corroboration.

O'Neill, the engineer, in his examination in chief, testifies that after passing Mrs. McMullen on the crossing, he was looking ahead and south; could see the public road, did not see anyone on the crossing and did not see Buchanan before he was hurt and only when the train struck the wagon, and that he first saw the horse or wagon after he had passed the barn or granary When asked, "What did you do then?" he replied, "I did not have much time. I put the brake on just as soon as I could get it on. It was done almost that quick" (snapping his fingers). "About how fast were you going on this day at this point?" "I should say twenty-five

Argument.

or thirty miles an hour. Of course I could not just say."

On cross examination he states that he was maybe two hundred feet distant away from the crossing when he first saw Buchanan's wagon, changing this by saying, "I only saw his horse at that time. The horse seemed to be where the telegraph pole now is; about the end of the hedge or telegraph pole. I just saw his head going up, like as if a man pulled his horse back right quick. That was the first of my seeing the horse. Of course, afterwards I saw more of it."

It becomes immaterial whether Buchanan saw the engine before the engineer could see the horse, for the reason that when the engineer got sight of the horse, his head was in the act of being pulled up, thus corroborating Buchanan's testimony that he snatched his horse with the right rein the moment he became aware of the train.

The question of negligence or no negligence is thus brought down by the testimony of both sides to an instant of time.

So that it is established by the engineer himself that the plaintiff while still behind the embankment, and so, on the calculation of counsel, still where he could not see the train, had become aware of its approach, and had pulled up the horse's head; or as the plaintiff says, "gave the horse a sudden jerk with his right hand."

The collision did not happen because the plaintiff below failed to look or failed to see, when he had the chance to do both, for he tried to avoid the collision before he had the chance to do either.

The case, however, actually begins at an earlier point. Buchanan, from the time he lost sight of the railroad behind the orchard five hundred and seventy-three feet distant from the crossing, walks his horse towards the track. At the mouth of the McMullen lane two hundred and twenty-eight feet from the track, he looks down and sees thirty feet of the railroad at the bottom of the lane and with no train in sight. He continues to walk his horse until he reaches a point, in his judgment, nearest to the track where it is safe to stop, not exceeding forty feet therefrom, where he halts, and long enough to listen, and, as he says, to look,

although at that point nothing could be seen except the track, straight ahead of him. We submit that, so far, he has done all that the law demanded of him in the exercise of diligence, all that indeed, under the circumstances, he could do. He could hear just as well at that point as at any other and he could see just as well there as any other, for there was no point where he could see an approaching train at all.

It is established for the purposes of this argument, that neither bell was rung nor whistle blown to give warning; that the wind was blowing from the southwest, and that there was actually no further step that Buchanan might have taken. Where and how can he be said to **have** contributed to the accident by any negligence of his?

## II.
### On the Law.

The first assignment of error is that the court erred in refusing to instruct the jury to find a verdict for the defendant. The questions arising under this assignment are not passed upon in any of the four cases heretofore before the courts of the state.

In *Lynam v. Railroad Co.*, 4 *Houst.* 583, the plaintiff was nonsuited. The collision was in the night time. The railroad passed across the private lane of the plaintiff, extending from the turnpike to the residence. From the turnpike to the crossing was about two hundred and twenty-five yards. The descent of the lane from the turnpike to the railroad and across it to the dwelling house commanded an uninterrupted view, by daylight, of the entire line of the railroad, and, in turn, upon it for the same distance in that direction. The train came from the south without bell or whistle or headlight, in the place of which a lantern was placed on the front of the engine. The train, a passenger one, was lighted as usual.

The court after stating that the plaintiffs failed to stop, look or listen, said:

"Had they done so an instant before they drove upon the track at the crossing, it would have prevented the collision and injury."

But that case throws no light upon the present one where the train and the horse get to the tracks substantially at the same time.

In *Parvis v. Railroad Co.*, 8 *Houst.* 436, the question of the diligence of Dr. Parvis was left to the jury under the charge of the court.

Chief Justice Comegys said:

"The train did not come to the crossing on time, as was to be expected, and might have been seen by looking up the road in time to avoid the collision, if he had looked for it; for there was a clear space of thirty-seven feet before the crossing was reached, and, according to its rate of passage, it took the train about twenty seconds to traverse the rails from the factory to the fatal crossing.

"According to the law of this State, as laid down in this Court in the case of *Lynam v. Railroad Co.*, 4 *Houst.* 583, the deceased was bound, before he reached that Frogtown crossing, to look for that train. We can never know whether he looked or not. If he did before he got on that crossing, he must have seen it. If he did see it, he must be supposed to have taken the risk of being able to get over the crossing in time. If he did not, then unfortunately he would seem to have failed to exercise the care and caution of an ordinarily prudent man. Whether he did fail or not is a matter for you in view of all the facts in the case."

*Knopf v. the Railroad Co.*, 2 *Penn.* 392, was an action for personal injuries sustained by the plaintiff and injuries to his baker wagon, run into at a railroad crossing near Landlith Station.

There is no statement of facts in the report outside of the charge to the jury.

The court charged as to the duty of the plaintiff as follows:

"It is a general rule of law that persons crossing a railroad are bound to the reasonable use of all their senses for the prevention of accident, and also to the exercise of all such reasonable caution as ordinarily careful and prudent persons would exercise in like circumstances.

"A person approaching a railroad crossing with which he is familiar, is bound to avail himself of his knowledge of the locality

Argument.

and act accordingly. If as he approaches the crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, and he is thereby injured, he is guilty of negligence, and could not recover therefor. When the view at the crossing is obstructed greater care is necessary than in places where the view is unobstructed. *Brown v. Wilmington City Ry. Co.*, 1 *Penn.* 335; *Price v. Charles Warner Co.*, 1 *Penn.* 462.

"If a person drives up to a railroad crossing and upon it, not only without stopping but without looking out or listening to ascertain if any train is approaching, and a collision and injury occurs to him from a passing train, which would have been prevented had the person so injured exercised the proper and ordinary prudence, care and caution mentioned, such person would be guilty of contributory negligence, and could not recover from the railroad company for such injury."

The second assignment of error is that the court erred in refusing to instruct the jury as follows:

"If as he approaches the crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid the collision and injury, and if he does not look, and *for this reason does not see* an approaching car until it is too late to avoid a collision and he is thereby injured, he is guilty of negligence, and could not recover therefor."

The words italicised differentiate the *Knof case* from the present case. The words of the prayer would fit the present case if Buchanan did not see the approaching train until it was too late to avoid the collision and injury, because he didn't look, but he failed to see the train in time to escape because he and the train arrived at the crossing within a fraction of a second of each other, and where, because of the obstruction to the sight, it was impossible for him to see the train in time to avoid the collision.

*Queen Anne R. R. Co. v. Reed*, 5 *Penn.* 226, is the only railroad crossing case, which has reached this court. Mr. Reed, like Dr. Parvis, was killed and hence could not testify. The court declined to nonsuit the plaintiff for contributory negligence.

Argument.

This court reversed the judgment. The railroad was in a cut from three to six feet on the east side of Federal Street, and on the same side a growth of trees, bushes and briars, which materially obstructed the view of the railroad in the direction from which the train was approaching.

The court say:

"The testimony as to the conduct of the deceased is wholly without contradiction. The reasonable explanation of the increase of speed when the deceased was within one hundred feet of the railroad crossing is that he then became conscious of the fact that a train was approaching, and that he attempted thereby to clear the crossing before the train reached that point. If this was so, it was a clear case of negligence. He might have stopped or turned aside; but if, instead of doing so, he attempted a race with a locomotive, he did so at his own risk, and the defendant company is not responsible for the consequences of such conduct."

"The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own and others' safety and protection; and he is required, at least, to look and listen, for an approaching engine or train before venturing to cross the track. And, if, as it has been said, he fails to exercise such ordinary care, whatever danger he could thereby have discovered, and avoided, he incurs the peril thereof, if he proceeds, and for an injury arising under such fault, he is left without remedy."

These words were repeated by the court below in the present case in the charge to the jury.

The plaintiff below then was bound to the use of reasonable and ordinary care;

To look and listen before venturing to cross the track;

But the penalty he pays for failure so to do is confined to

losing his remedy for whatever danger he could thereby have discovered and avoided.

The court below did not err in refusing to give binding instructions to the jury to find a verdict for the defendant, but properly left the question of the negligence of the defendant and contributory negligence of the plaintiff to the jury.

In *Winstanley v. Chi. etc. R. R. Co.*, 72 *Wis.* 375, the Court, under circumstances closely approaching the present case, sustained the refusal of the court below to give binding instructions for the defendant, and held that the case ought to be considered by the jury.

In *Guhl v. Whitcomb*, 109 *Wis.* 75, the court say:

"The rule stated in these decisions is that the duty to look and listen is absolute where the opportunity exists. This rule is general and applies as well to the driver of a team as to the foot passenger, with the difference, however, that it is much more difficult to conceive circumstances surrounding the latter which can at once deprive him of the opportunity to observe and the ability to stop short of the actual peril. With him a single step, wholly under his control, crosses the danger line. With the driver, many things may complicate the situation—momentum, conduct of horses, multiplication of perils, and the like."

In *Smith v. Chicago etc., R. R. Co.*, 137 *Wis.* 97, cited by the plaintiff in error, the court repeat the first sentence of the above question, but held that it did not apply where the plaintiff had the opportunity to look and listen over fifty-three feet of space, which intervened between the point where he stopped, looked and listened and the nearest rail of the track.

In *Kenney v. Hannibal etc., R. Co.*, (*Supreme Court of Mo.*, June 15, 1891) 16 *S. W.* 837, the Court say:

"The engineer said: 'When we got almost to the road crossing, I saw a team coming right on the rails, the horses' forefeet just inside the north rail. The horses shied off to one side. I saw a man stick his head out of the buggy, look up, and then struck his horses with the lines, or maybe a whip. The engine caught the buggy. When I first saw them we were about thirty feet from the crossing, and were running about twenty-five miles

per hour.' And on cross examination he added: 'I was looking forward out of my cab window on the north side of engine when I first saw Kenney. This is my side of the engine cab. The window in front of me is on the right-hand side of the boiler, and I looked through it. The first I saw he was coming on the track. I immediately shut my engine off, and called for brakes, and we stopped about forty or fifty car-lengths west of the crossing.' From this statement of the engineer, whose position in the cab placed him considerably above the level of the plaintiff's buggy, it is evident that the surroundings of the point of crossing are very unfavorable to a view of the track or of the highway from each other. If the engineer, on the lookout, could not observe plaintiff's buggy till the engine was within thirty feet of the crossing, it is a mere matter of easy calculation to show that plaintiff's team must then have been within seven or eight feet of the rails. He was moving at four or five miles an hour. At the higher rate he would cover a little less than seven and one-half feet each second, while the engine (at the rate of twenty-five miles an hour) would pass over the thirty intervening feet in five-sixths of a second. So, when first seen by the engineer, plaintiff's team must have been just clearing the cut, referred to particularly by the plaintiff's witness, who said, that 'he would not get clear of the obstruction made by the cut until within six or eight feet of the railroad crossing.' The engineer was at his post on the side of the cab from which plaintiff was approaching, and, if he could not see the buggy until five-sixths of a second before reaching the point of crossing, it is measurably clear that the man in the buggy could not have seen the engine much sooner. We mention the above, with the facts previously stated, merely to furnish another view of this crossing whose peculiarities have an important bearing on the merits of the case. We are of opinion, that the question of plaintiff's alleged contributory negligence, in view of all the surroundings, was fairly one of fact for the jury, and that the trial court did not err in submitting it, as such, to them."

In the case of *Penna. R. R. Co. v. Righter*, 42 *N. J. L.* 180-187, the Court of Error and Appeals reversed the judgment below for failure to nonsuit the plaintiff, injured at a grade crossing,

because the plaintiff, while still more than thirty feet from the track, had a clear field for observation.

In *Plummer v. Eastern R. R. Co.*, 73 *Me.* 591-594, the court say:

"The plaintiff and his wife looking in both directions hearing no sound of cars, whistle or bell, and with vision somewhat obstructed by buildings and trees, attempted to cross, and in that attempt were injured. It is uncertain to what extent he could see the cars through the intervening obstructions. His attention was called to the danger and he and his wife looked to see if there was a train in view. The obstructions may have prevented their seeing. Seeing nothing, hearing no warning of danger through the negligence of the defendants, in attempting to cross, the plaintiff was injured. Under the circumstances of the case, it was for the jury to determine whether he exercised the care the law requires."

In *Chicago R. Co. v. Hedges*, 105 *Ind.* 398:

The engine was detached from the moving train and run with quickened speed across the street to a water tank two hundred and forty feet west of the crossing, the train being left to follow on a down grade, in charge of a brakeman.

The court say:

"The interval of time between the passing of the engine and the coming of the train might, under the evidence, have been found by the jury to have been very short, and considering this fact in connection with the evidence, that the whistle was sounded as the engine approached, that the bell was rung as the engine passed, that the cars, only six feet in height, came on without signal, that the view was obstructed, and that the intestate had no knowledge of the time of the train, the jury might conclude that the attention of the intestate was diverted so that without negligence on his part he, for this reason, did not see the train in time to escape; that his conduct was influenced by the defendant's negligent acts, and he was thus thrown off his guard, so that without his having acted otherwise than as might have been excusable in a prudent man, under the circumstances, he was run down.

In *Chicago & N. E. R. Co. v. Miller*, 46 *Mich.* 532:

The plaintiff, a farmer, aged sixty-seven years, was driving a pair of three-year-old colts at the top of their mettle, and stopped about sixteen yards from the track, listened and watched, and as he approached the track, as he could not then see the train, spoke to his horses, and as they reached the track, or within two rods of it, he saw the train approaching, about twelve rods distant. He said, "At the first glance I made up my mind I would get across that track and swung my whip, and the horses both jumped"; and while crossing the locomotive struck the hind wheel of the wagon, causing the injury. The banks on the north side of the road were some twelve or fifteen feet high. Asked why he didn't stop his horses, he replied, "I was partly sure I would get under the cars if I undertook it; if I was in the same position today I would do the same thing." He heard no bell or whistle. The court say:

"From his testimony it does not appear that he did not exercise due care and caution in approaching the crossing, and it is only when he gets within a few feet of the railroad track and sees a train approaching and close at hand, that he can be charged with negligence in attempting to cross the track. This was the first warning or knowledge that he had that a train of cars was near, and with a high embankment on one side, and the apparent danger in attempting to turn in an opposite direction; without time for reflection or to deliberate and calculate or measure distances he had to determine his course and instantaneously make the attempt."

In *Pearce v. Humphreys*, 34 *Fed. Rep*. 282, the opinion was delivered by Judge Brown, who said:

"I also think the question of contributory negligence was one for the jury. Plaintiff says he listened for the train as he approached the track but heard nothing. Had he been on foot, I should have held without hesitation that it was his duty to stop and look before crossing the track. *Pzolla v. Railroad Co*., 54 *Mich*. 273, 20 *N. W. Rep*. 71. He was, however, driving a team of horses. If he had stopped before the horses reached the track, it is at least doubtful whether he could have seen anything, owing to the intervening line of freight cars, and while so standing still would have been exposed to injury from cars passing upon tracks

Argument.

to the southward of the main track. It would evidently have been of no avail to stop after the horses had begun to cross the track. It is difficult to see what more he could have done, unless it was to get out of his wagon, and go forward on foot for the purpose of looking; but this he was not obliged to do, particularly in view of the fact that he would have had to leave his team standing upon the track south of the line of freight cars. It is true, it was held in the case of *Railroad Co. v. Beale*, 73 *Pa. St.* 504, that if a traveler cannot see a track by looking out of the carriage he should get out and lead his horse, but I think this case is opposed to the great weight of authority, and particularly to the cases of *Mackay v. Railroad Co.*, 35 *N. Y.* 75, and *Davis v. Railroad Co.*, 47 *N. Y.* 400; *Kellog v. N. Y. C. etc. R. R. Co.*, 79 *N. Y.* 72.

In *Judson v. Cent. Vt. R. Co.*, 158 *N. Y.* 597-605, the foregoing cases were reviewed and approved.

In *Frederick v. The Fonda etc. R. Co.*, 52 *N. Y. App. Div.*, 603, the court say:

"The question whether a party looks at the right place is ordinarily one for the jury to determine."

In *Wiedman v. Erie R. R. Co.*, 66 *N. Y. App. Div.* 347, evidence showed that the plaintiff's view of the train was to some extent obstructed by a bank located south of the street and east of the railroad tracks.

"Held that the plaintiff was not to be charged with all the possibilities of vision and hearing as he approached the tracks, but was bound simply to make all of the reasonable efforts to see and hear that a careful and prudent man would make under like circumstances."

In *Shaw v. Jewett, Receiver*, 86 *N. Y.* 617, the court say:

"The plaintiff is not bound to see; he is bound to make all reasonable effort to see that a careful, prudent man would make in like circumstances. He is not to provide against any certain result. He is to make an effort for a result that will give safety; such efforts as caution, care and prudence will dictate."

In *Greaney v. Long Island R. R. Co.*, 101 *N. Y.* 419, the court quoted, with approval, the words from *Shaw v. Jewett*, above, and

also quoted, with approval, from *Kellogg v. N. Y. etc. R. R. Co.* (*Supra.*)

In *Hubbard v. Boston & Albany R. R. Co.*, 162 *Mass.* 132, the court say:

"The place where the accident happened was exceedingly dangerous. Under the circumstances of this case we cannot say, as a matter of law, that he was negligent, but we are of opinion that it was for the jury to determine whether he was in the exercise of reasonable care."

In *Hicks v. N. Y. etc. R. R. Co.*, 164 *Mass.* 424, the court say:

"When the plaintiff was only thirty feet from defendant's track, he stopped until satisfied that it was safe to proceed. Defendant's contention that, as he approached the track, plaintiff was bound to stop again, as well as to listen, finds support in no decision of this court. We cannot say, as a matter of law, that a reasonably prudent man, with nothing to excite his apprehension, would not have relied, as plaintiff did, on his sense of hearing. Whether or not he should have stopped again was a question properly submitted to the jury.    See *Guggenheim v. Railway Co.*, 66 *Mich.* 150."

In *Cookson v. Ry. Co.*, 179 *Pa.* 184, it was said: "The duty of a traveler is therefore not only to keep a vigilant and continuous lookout, but to stop if a second place affords any increased facility to discover impending danger, but whether there is any such second place is a question of fact which is for the jury if at all in doubt. On this branch the present case is closely analogous and governed by *Whitman v. Penn. R. R. Co.*, 156 *Pa.* 175.    See also *Ely v. Ry. Co.*, 158 *Pa.* 233."

*Elston v. D. L. & W. R. R. Co.*, 196 *Pa.* 595:

"The Court can treat the question of contributory negligence as one of law only in clear cases, and when the inferences to be drawn from them are free from doubt."

*Confer v. Penna. R. R. Co.*, 209 *Pa.* 425; *Ayers v. Pittsburg etc. R. Co.*, 201 *Pa.* 124.    In *Cromley v. Penna. R. R. Co.*, 208 *Pa.* 445, it was said:

"But the rule stated in *Carroll v. Penna. R. R. Co.*, 12 *W. N. C.* 348, and the long line of decisions that have followed, is in its

nature applicable only to clear cases, and if there is a reasonable doubt as to the facts or the inferences to be drawn from them the case must go to the jury; *McNeal v. Pittsburg etc. Ry. Co.* 131 *Pa.* 184; *Muckinhaupt .v Erie R. R. Co.*, 196 *Pa.* 213; *Doud v. Delaware etc. R. R. Co.*, 203 *Pa.* 227."

In *Ganger v. P. & R. R. Co.*, 168 *Pa.* 265, relied on by the appellee, it was undisputed that the driver of the team could have seen the train and stopped in safety if he had looked within fifteen or twenty feet of the track, and this distinction will be found in all cases that have been decided on the principles stated in *Carroll v. Penna. R. R. Co.*, *supra.* *Kinter v. Penna. R. R. Co.*, 204 *Pa.* 497, case cited by counsel for the plaintiff in error; we submit that every one of them was founded on the distinction pointed out by the case of *Cromley v. Penna. R. R. Co.*, 208 *Penna.* 445; that it was undisputed that the driver of the team could have seen the train and stopped in safety if he had looked when near the track.

In the case of *Penna. R. R. Co. v. Peebles*, 67 *Fed.* 591, first cited by counsel for plaintiff in error, the facts of the case differentiated so widely from the case at bar that we wonder at it being relied upon. The deceased neither stopped, listened or looked.

The railroad was under unobstructed view, except until within about sixty or sixty-five feet of the track, when for the next forty feet, it was claimed the tool house .obstructed the view.' Even the court did not admit that this obstruction existed.

It is clear, therefore, on the evidence that Peebles, if he had looked could have seen, and further that he did not look. The evidence in the case at bar is equally clear on the testimony of the engineer and fireman that the plaintiff below could not see in time to keep his horse from the track and that even before he had a fair sight of the train, he had already jerked his horse's head to the right, but was unable to keep him from being so close to the track as to be struck by the engine.

In *McClure v. R. Co.*, 41 *Pa. Sup. Ct. Reps.* 227: It is stated that at a point sixteen feet from the track, the driver could have had a clear view of the train for a full mile to the westward.

We are unable to apply the facts of this case to the case at

bar, because if Buchanan had stopped where he was, sixteen feet from the track, and so could see up the track to Porter's, his horse would have been on the track and he would have been killed. A traveller, either on foot or on a bicycle, would be in a totally different position.

*Shufelt v. R. Co.*, 96 *Mich.* 327, comes within the same reasoning.

In *R. Co. v. Righter*, 42 *N. J. L.* 181: "The plaintiff while more than thirty feet from the middle track, had a clear field for observation."

In *Walsh v. Penna. R. R. Co.*, 222 *Pa.* 164: At thirty-five feet from the center of the track, the plaintiff could have seen the approaching engine at a distance of seven hundred and forty feet.

In *Leithead v. R. Co.*, 72 *Atl. Rep.* 453 (*N. J.* 1909): There was an unobstructed view for more than a mile at thirty-eight feet from the nearest rail of the track, on which the train was coming.

In *Weiss v. R. Co.*, 69 *Atl.* 1087 (*N. J.* 1908), the plaintiff testified "that he stopped, looked and listened when five feet from the track of the railroad and when he, sitting in the wagon, was within fifteen feet of the road. Regardless of the testimony in the case, which shows that the track could be witnessed at various distances from the track while traveling in a wagon along Woodbridge Avenue, toward the crossing, the testimony seems to be conclusive that, at the point where the plaintiff says he stopped and looked and listened, the train must have been visible when he started to drive across the track."

In *R. Co. v. Hickox*, 104 *Md.* 659, the court held:

"That if the plaintiff had looked and listened when near the crossing, he could have seen the train in time to have avoided the injury."

In *Ry. Co. v. Jones*, 56 *S. E. Rep.* 155 (*Va.* 1907), the plaintiff could have seen the approaching train forty feet distant from the track.

In *Stokes v. R. Co.*, 104 *Va.* 819, plaintiff could have seen when twenty-five or thirty feet from the track.

In *Smith v. R. Co.*, 137 *Wis.* 97, the plaintiff stopped at fifty-three feet from the track, but he could look and listen during the entire distance and proceeded without doing so, which was properly held to be negligent.

In *Phillips v. R. Co.*, 111 *Mich.* 274: Where the approach to the track was obstructed by a hen-house six feet high and ties nine feet high, the plaintiff "if he had stood up in his carriage, could have seen over the hen-house and ties the train when some twelve hundred feet away."

In *R. Co. v. Ackerman*, 144 *Fed.* 959: The deceased could have seen the train four hundred feet when within a space of fifty feet from the track.

In *Smith v. R. Co.*, 87 *Me.* 343: The plaintiff, after stopping sixty feet from the crossing, drove on without further stopping to look and listen, and *held* negligent.

In *McKahan v. R. Co.*, 223 *Pa.* 1: There was a clear space of nineteen feet commanding an unobstructed view of the track for a distance of two thousand feet to the west. From the time the deceased started from the point about two hundred and twenty-five feet from the crossing he did not stop again, but went on at a good gait until his team was struck.

We will not undertake to discuss the *Pennsylvania cases* cited for the plaintiff in error, requiring a driver to get out and walk in front of his horse. It is law no where else than in Pennsylvania.

The authorities cited by us support the proposition that the plaintiff below was not bound to use more than reasonable and ordinary care; was not guilty of contributory negligence, since he had no opportunity to discover and avoid the collision, and that the court below did not err in refusing to instruct the jury to find a verdict for the defendant.

To lay down an unqualified rule that a traveler must stop and look at a point where he can see, even though it brings his horse immediately up to the track, leaves out of consideration the alternative danger arising from the frightening of the horse, and such law is not sustained by authorities. *Hubbard v. B. & A. R. R. Co.*, 162 *Mass.* 134; *Elston v. Ry. Co.*, 196 *Pa.* 595; *Cromley v. P. R. R. Co.*, 208 *Penna.* 448; *Chicago etc. R. R. Co. v. Miller*,

46 *Mich.* 532; *Winstanley v. R. R. Co.,* 72 *Wis.* 375; *Guhl v. Whitcomb,* 109 *Wis.* 75; *Davis v. R. R. Co.,* 47 *N. Y.* 400.

The same principle is applied by the court of Wisconsin, which holds that the duty to look or listen where the attention "is reasonably arrested or diverted" or where "the attention is irresistibly forced to something else as to deprive the traveller of the opportunity to perform his duty."

*Piper v. R. R. Co.,* 72 *Wis.* 247; the plaintiff is not bound to see.

*Shaw v. Jewett,* 86 *N. Y.* 867; *Geraney v. Long Isl. R. R. Co.,* 101 *N. Y.* 419; *Cromley v. R. R. Co.,* 208 *Pa.* 448; *Shreider v. R. R. Co.,* 99 *Wis.* 386; *Koester v. R. R. Co.,* 106 *Wis.* 460-469; *Guhl v. R. R. Co.,* 109 *Wis.* 69; in *Shaw v. Jewett,* the court say:

"That is not the rule.   The plaintiff is *not bound* to see;  he is bound to make all reasonable effort to see that a careful, prudent man would make in like circumstances.   He is not to provide against any certain result.   He is to make an effort for a result that will give safety;  such effort as caution, care and prudence will dictate."   See *Cromley case,* 208 *Penna.* 448.

Measurements and experiments to show that an approaching train could be seen from various points on the highway is evidence frequently reliable and satisfactory but it is not necessarily conclusive.

*Kellogg v. N. Y. C. R. R. Co.,* 79 *N. Y.* 77:  In the *Kellogg case* the Court say:

"Such experiments are made when the witnesses are calm, and their whole minds free from any distractions, are intent upon the matter in hand.   They cannot be made under the precise circumstances which attend the transaction to be investigated.   There may be a slight change in the intervening obstacles, and the speed of the approaching train is not there.   They do not show conclusively what ought to have been seen by a man having a horse to manage and his attention somewhat distracted by the expectation of a train from the opposite direction."

We submit, therefore, upon the whole case that the question of contributory negligence on the part of the defendant below was properly left to the jury.

The second assignment of error is, "That the Court below erred in refusing to instruct the jury as follows:

"If, as a person approaches a railroad crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and *if he does not look and for this reason does not see an approaching train until it is too late to avoid a collision*, and he is thereby injured, he is guilty of negligence and could not recover therefor."

While these words were used in the charge to the jury in the *Knopf case*, we submit they were not applicable to the facts of the case at bar, and that if included in the charge, it would have been misleading to the jury. The words above italicised are the vital words in the instruction and imply a state of facts which were not sustained by the evidence in the present case.

The evidence of the plaintiff below is that he jerked his horse's head to the right as soon as he was aware of the train, and the engineer and fireman both testify that the horse's head was pulled up before they could see the body of the horse, or the wagon or Buchanan. This conclusively shows, therefore, that Buchanan looked and saw the train the instant it could be seen after he proceeded beyond the obstruction.

*Evening Post Pub. Co. v. Voight*, 72 *Fed.* 890; *Continental Imp. Co. v. Stead*, 95 *U. S.* 161-166. In the first case, Wallace, Circuit Judge, well said:

"As an abstract proposition this instruction expressed a correct view of the law, but there was no fact in evidence that sanctioned its application to the case in hand."

In the second case, Justice Bradley says as to a certain instruction:

"The facts assumed in the instruction proposed depended on the evidence, and did not by any means comprise all the facts bearing upon the question; and, aside from the discretion which, as we have stated, may be exercised by the judge, we think he did quite right in this instance, after stating the law to the jury, in submitting the evidence to their consideration." * * * "A judge is not bound to charge upon assumed facts in the *ipsissima verba* of counsel, nor to give categorical answers to a judicial cate-

25 Del.]     P., B. & W. R. R. Co. vs. Buchanan.     235

Argument—Opinion.

chism based on such assumption.   Such a course would often mislead the jury instead of enlightening them, and is calculated rather to involve the case in the meshes of technicality, than to promote the ends of law and justice."

The third assignment of error is as follows:

"That the Court below erred in admitting testimony by Wilmer J. Falls, a witness produced on behalf of the plaintiff below, with respect to the points in the public road west of the railroad crossing at which a train could be seen approaching the crossing, where it appeared by his testimony that he was on foot and not in a wagon as was the plaintiff below in this case at the time of the accident, and where it further appeared that at the time of making examination or test no train was approaching the crossing."

The fourth assignment of error is as follows: "That the Court below erred in admitting testimony of the plaintiff below as to certain tests made by him subsequent to the time of the accident as to the points in the public road, west of the railroad crossing, at which a train could be seen approaching the crossing, where it appeared by the testimony of the plaintiff that at the time of the making of said tests no train was in fact approaching the crossing."

We submit as to both objections:

That they are not sound, for the reason that they only go to the weight of the testimony and not to its being competent.   If the tests had been taken from a wagon and with a train approaching, they might carry more weight we think, but though they were taken on foot, with no train approaching, they were evidence as to what could be seen or not seen from the points in question.

PENNEWILL, C. J., delivering  the opinion of the court:

This action was brought in the court below to recover damages for the plaintiff's personal injuries, for injury to his wagon and for the death of his horse, all  alleged to have been caused by the defendant's negligence.

A verdict was rendered at the trial in favor of the plaintiff, and the case is here upon writ of error.

There were eight assignments of error filed, but at the argu-

ment the fifth, sixth, seventh and eighth were abandoned. Those relied upon, therefore, are the first, second, third and fourth.

The particular assignment of error that was argued at length, and relied upon, apparently, with much confidence, was the first, viz.:

That the court below erred in refusing to instruct the jury to find a verdict for the defendant.

The position taken by the plaintiff in error upon this assignment of error is "that, admitting the negligence of the railroad company, yet from all the evidence, giving it the most favorable construction to the plaintiff below, it clearly appears that there was such contributory negligence as will bar recovery in this case."

The proper understanding and decision of the question thus presented requires that the pertinent facts shall be stated, and with sufficient fullness for the court to determine whether the plaintiff below was guilty of such negligence as would defeat recovery.

It is not controverted that on the second day of June, A. D. 1908, the horse and wagon, driven by the plaintiff were going easterly on the public highway, and a special freight train of the defendant was going southerly, on the westerly south-bound track of the defendant's railroad, when a collision occurred between the horse and train, at a place known as Stewart's Crossing, which is between Porter and Kirkwood stations in New Castle County.

The railroad at Stewart's Crossing consists of two tracks. The south-bound track is the track first crossed by travelers on the public highway coming from the west. Porter's Station is the railroad station immediately north of Stewart's Crossing and about three-quarters of a mile away. The view toward the north of a traveler on the public road coming from the west, approaching Stewart's Crossing, is obstructed by the elevation of the ground, crops, trees and buildings. The public road makes a slightly acute angle with the railroad.

The plaintiff was a butcher living at Kirkwood and had been passing over Stewart's Crossing once or twice a week for about nine months prior to the accident. On the second day of June, the day of the accident, the plaintiff arose at four or half-past four in the morning. The day was clear and warm. He was on his route

25 Del.]     P., B. & W. R. R. Co. vs. Buchanan.     237

Opinion.

from six o'clock in the morning until one o'clock in the afternoon, when on his way home he drove westwardly along the public road toward Stewart's Crossing. He was seated in his butcher wagon, upon which the front side curtains were up. He could see right out on either side and did not have to lean forward or lean out. His feet were on the footboard of the wagon. Several hundred feet back from the crossing the view of the railroad toward the north is broken by an apple orchard, so that south-bound trains are obscured. At a point about two hundred and twenty-eight feet from the crossing a private lane opens off the public road, through which a view of the railroad can be had for a length thereon of about thirty feet at a point about five hundred or six hundred feet north of Stewart's Crossing. After leaving this lane the view of the railroad towards the north is obscured by the elevation of the ground, crops, fences, trees and buildings.

On the south side of the road the view of the railroad is obstructed by a high hedge running from the private lane above mentioned down to the right of way of the railroad company.

As the plaintiff passed the entrance of the private lane, he looked through and saw the railroad track, but saw no train coming.

The plaintiff testified that he walked his horse down the road until he was just close enough to the track to be safe, and stopped and looked and listened. This distance he says would not be more than forty feet from the track. He stayed there "just long enough to listen and see that there was nothing coming; a reasonable length of time." He was familiar with the fact that trains ran both ways on the tracks of that railroad. He then spoke to the horse and the horse started to walk.

The obstruction to the view of the railroad toward the north ended at a point west of the southbound track (so as to allow a view of the railroad tracks northward as far as Porter's) at a distance, measured in the middle of the public road, of nineteen feet (according to the plaintiff's testimony) and of twenty feet (according to the defendant's testimony). These distances are measured in the middle of the public road westward from the westerly rail

of the southbound track. The testimony of the plaintiff is to the effect that at a point nineteen feet west of the first rail of the railroad track you can see up the railroad track toward Wilmington.

The plaintiff testified, as follows:

"Q. After you leave the barn, or lane, where is the first point you can see a train coming from the north as you are driving from the west? A. Your horse would be about on the track. Q. Do you mean when you could see to the north on the railroad at all? A. Yes, sir. Q. Could you see anywhere else than directly in front of you? A. On the right-hand side, do you mean? Q. Yes; looking towards Kirkwood. A. No, sir. Q. Why not? A. Because the hedge shut off the view." * * *

"Q. After you come to this lane going into Mrs. McMullen's, where you say you looked for a train, what did you do after that? A. I walked the horse down until I was just close enough to the track to be safe and I stopped and looked and listened. Q. About what distance, if you can tell, was that from the track? A. I could not say exactly, but I know it would not be more than forty feet. Q. Could you give us some idea as to how long you stayed there? A. Just long enough to listen and see that there was nothing coming; a reasonable length of time. Q. Then after you say you had stopped long enough to know that, what did you do? A. I spoke to the horse and he started to walk, and when I got to where I could see, the train was right there, and the first thing I saw was the train. Q. About how far was the train away from you when you saw it? A. A very little distance. It was right on me. Q. How far out, if you know, in the open space, had you gotten when you first saw this train coming? A. I don't know— well, it was just when the horse stepped on the track the train was there; just far enough so that I could see. That is all I can say. Q. Then what happened—what did you do? A. I gave the horse a sudden jerk with my right hand. Q. Do you know what happened then? A. No, sir; I don't." * * *

"Q. Do you know what the distance was from your horse's head back to your seat in the wagon? A. I measured a horse similar to the one I drove, and it was sixteen feet. Q. To what part of the seat? A. To the front of the seat where I was sitting. Q.

25 Del.]     P., B. & W. R. R. Co. vs. Buchanan.     239

Opinion.

You measured that to a butcher wagon similar?   A. Yes, sir. Q. And it was a distance of sixteen feet?   A. Yes, sir."

*Wilmer J. Falls*, a witness produced on behalf of the plaintiff, a surveyor by occupation, testified "that he made a test as to what point on the public highway, approaching from the west, you would first come to a clear view of a train coming from the north, and found that it was about twenty feet from the center of the southbound track (which, of course, was the track on the west side of the railroad and the one upon which the train came)."

*Harry A. Cramer*, a witness produced on behalf of the defendant, and a civil engineer, testified that he made tests on the twentieth day of September, 1908, at the crossing and at a point nineteen feet from the first rail of the southbound track, and that he had a clear view to the northwest of any approaching train for 3,000 feet.

*Frank J. O'Neill*, a witness for the defendant, and the engineer of the train, testified as follows:

"Q. Where were you looking then?   A. Looking south. Q. Could you see the public road?   A. Yes, sir.   Q. Did you see any one on the crossing?   A. No, sir.   Q. Did you see Mr. Buchanan at all on that day?   A. No, sir—I did after he was hurt; yes, sir.   Q. Did you see him before he was hurt?   A. No, sir; only when we struck the wagon."   *   *   *

In cross examination:

"X. How far were you away from the crossing when you first saw Mr. Buchanan's wagon?   A. I should judge maybe two hundred feet."   *   *   *

"X. Where was his wagon at that time?   A. I only saw his horse at that time.   X. And you were two hundred feet north of the crossing?   A. As near as I can judge."   *   *   *

"X. Where was his horse, on the highway?   A. His horse then seemed to be where the telegraph pole now is; about the end of the hedge or telegraph pole.   X. The telegraph pole is right at the end of the hedge is it not?   A. Close to it."   *   *   *

"X. How much of the horse at that time did you see?   A. I just saw his head, going up, like as if a man pulled his horse back right quick.   That was the first of my seeing the horse.   Of

course, afterwards I saw more of it.   X. He came right on out, did he?   A. Yes, sir; he got further than that.   X. That was the time you saw him snatch his horse's head up?   A. His horse's head went up like as if a man would pull on the lines to stop his horse.   X. Did the horse stop?   A. I could not say—no, sir; I suppose he did not.   X. Then the horse kept on coming?   A. Yes, sir; I suppose he could not stop the horse right on the spot. X. You were there on this engine that was drawing these twenty-eight cars, and in charge of the same; don't you know whether the horse did stop or not?   A. You know how a thing like that happens; the time is so short and the rate I was running, you may know how long a time I would have to look and see whether the horse stopped or not.   X. Why could you not see the rest of the horse and wagon?   A. On account of the embankment there."   *   *   *

"X. When you saw the horse, why didn't you then sound your alarm whistle?   A. Because I thought he would stop.   As I said before, you understand in that time a man ain't got much time to think, and does the first thing I suppose he thinks of. And then I think maybe about the same time I saw him my first thought was to stop, and I put the brake on just as hard as I possibly could.   X. You did that when the man's horse was practically on top of you?   A. I don't think so.   X. You told us a little while ago that you could not see anything except the head of the horse when you first noticed it, on account of the bank?   A. Yes, sir; and I think the man saw me at the same time I saw it, on account of his pulling the horse's head up.   X. You at that time did not see the man at all?   A. No, sir."   *   *   *

"X.   Do you prefer to put your emergency brake on rather than sound your alarm whistle when you see a thing like that? A. The first thing I thought of was to put the brake on, because it was done that quick (witness indicates by snapping his fingers), and I did not have time to stop and think of these things.   X. As a matter of fact, you saw it back two hundred feet from the crossing and went on sounding no alarm, but put your brake on? A. I put the brake on, but I never thought of the alarm.   In fact, I did not think anything about it, it was done so quickly."

From the foregoing statement of the testimony, the following may be taken to be true and undisputed:

1. That the plaintiff's view of the railroad tracks north of Stewart's Crossing was wholly obstructed except at McMullen's lane, and at a point nineteen or twenty feet from the crossing.

2. That the plaintiff looked through the lane as he passed it and saw the railroad for the length of about thirty feet, but did not see any train.

3. That he proceeded very slowly, his horse in a walk, and at a point about forty feet from the crossing stopped and listened, but heard nothing.

4. That he then continued on, his horse still in a walk, and did not stop until the horse was struck by the engine.

5. That after he had passed McMullen's lane it was not possible, because of the obstruction, to see the train until he, sitting in the wagon, was about 19 feet from the nearest track.

6. That when the seat of the wagon was nineteen feet from the track the horse's head was not more than three feet from the track, according to the plaintiff's testimony, which for the purposes of the question we are now considering we must assume to be true.

7. That at a point nineteen feet from the westerly rail of the southbound track an unobstructed view of the railroad in a northerly direction could be had for a distance of 3,000 feet or more.

Should the court below, upon the testimony, have directed the jury to return a verdict for the defendant? That is the important question to be decided in this case.

From such facts does it clearly appear that the plaintiff's own negligence proximately contributed to his injuries?

The following principles of law are so well settled in this state that they need only to be stated. They are fully recognized and affirmed in the well-considered opinion delivered in this court in the case of *Queen Anne's Railroad Company v. Reed*, 5 *Penn*. 226, 59 *Atl*. 860, 119 *Am. St. Rep*. 301.

"If there is any evidence of negligence, upon which the jury can properly find a verdict, or if the conclusion to be drawn there-

from is debatable, or rests in doubt, though the facts are undisputed, or if the evidence is conflicting in regard to any material fact, it becomes a question of fact for the determination of the jury."

"Although the plaintiff may show that the injury complained of was in consequence of the negligence of the defendant, yet it does not conclusively determine that the injury was legally attributable to such negligence, because it may equally appear that the injury was due to the fault or negligence of the person injured.  *  *  *  The burden of establishing contributory negligence, whenever it is relied upon in defense of the action, rests upon the defendant ; proof  of such negligence may, however, arise out of the testimony of the plaintiff in the first instance."

"It is quite impossible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact.   The determination of the question must necessarily be controlled by the facts and circumstances of the particular case.   And the court will not decide it as one of law, although the weight of the evidence may seem to be on one side or the other, if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. In such a case the court will not, and should not, attempt to weigh and determine the effect of the evidence involved in the issue of fact.   For under such circumstances the question clearly falls within the province of the jury.

"If, however, it clearly appears from the evidence that there was contributory negligence, proximately entering into and contributing to the accident, at the time of its occurrence, it is the duty of the court to so find, as a matter of law."

Ordinarily in actions for personal injuries, the cases in which the court is warranted in ordering a nonsuit, or directing a verdict for the defendant, "are confined to those where it is clearly manifest as a conclusion of fact, or by necessary exclusive inference, that those acts which the law regards as negligent have not been shown, or to those in which contributory negligence has been shown."

Opinion.

"The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own and others' safety and protection; and he is required, at least, to look and listen for an approaching engine or train before venturing to cross the track. And, if, as it has been said, he fails to exercise such ordinary care, whatever danger he could thereby have discovered and avoided, he incurs the peril of, if he proceeds, and for an injury arising under such fault, he is left without remedy."

"One about to cross a railroad track by the public highway, where the liability to the collision is great, will be held precluded, by his contributory negligence, from a recovery for an injury, if he drives upon the track without looking for an approaching train, even though the railway company has neglected to sound the alarm which the statute requires of it at such places."

"Although the view of the road is obstructed, that fact does not relieve the traveler from the obligation to look and listen for an approaching train. And the observance of this legal duty applies as well to a special as a regular train. The very fact of the existence of such obstruction, and particularly when it is known to the traveler, imposes additional care and caution upon him on approaching the track.

"Both the traveler and the company are charged with the same degree of care, the one to avoid being injured, and the other to avoid inflicting injury. The care of each must be commensurate with the risk and danger involved. And when it is known to the traveler and servants of the company that a crossing is very dangerous by reason of its surroundings, it is incumbent upon both parties to exercise additional care and caution."

It appears from the testimony in this case, and it is uncontradicted, that the plaintiff's view of the railroad in a northerly direction was obstructed for a distance of nearly six hundred feet before reaching a point about nineteen feet from the crossing, so

that it was practically impossible for him to see the approaching train until he reached such a point. It is admitted by the plaintiff that he was very familiar with the obstructions and other conditions existing near the crossing and along the highway leading to it. It was, therefore, obligatory upon him, because of such conditions, and his familiarity therewith, to use a higher degree of care and caution than would have been necessary in traveling upon a highway approaching a railroad where the view to an approaching train was clear and unobstructed.

While there can be no question about the law applicable to this case, which differs not at all from that which governed and controlled the court in the *Reed case*, supra, there may be some difficulty in applying the law to the facts of this case.

And, inasmuch as the *Reed case* was frequently referred to during the argument, it may be as well to say here that the facts in that case upon which contributory negligence was predicated, were not at all similar, or even analogous to those of the present case. In the course of the opinion in the former case the court said:

"The reasonable explanation of the increase of speed when the deceased was within one hundred feet of the railroad crossing is that he then became conscious of the fact that a train was approaching, and that he attempted thereby to clear the crossing before the train reached that point. If this was so, it was a clear case of negligence. He might have stopped and turned aside; but if, instead of doing so, he attempted to race with a locomotive, he did so at his own risk, and the defendant company is not responsible for the consequences of such conduct. Whether the speed at which he is proved to have approached the crossing did or did not indicate an intention to cross ahead of the train, it certainly shows a lack of that care and caution which were obligatory upon him under the circumstances at that time. Indeed, it seems quite inevitable from the evidence that there was a total absence of reasonable care and caution on the part of the deceased in approaching the crossing, in that he made no effort whatever to ascertain whether a train was approaching, or to avoid the danger imminent at the time he attempted to make the crossing."

25 Del.]    P., B. & W. R. R. Co. vs. Buchanan.    245

Opinion.

Obviously, a decision based upon the evidence in that case cannot be expected to control this court in determining the case at bar, where the evidence is essentially different, upon the question of contributory negligence.

We can see no reason for commenting upon, or even referring to the many cases cited by counsel in their briefs, because there can be no dispute about the law, and, moreover, whenever the question to be determined involves contributory negligence, the decision must depend upon the facts of the particular case. It is impossible to find two cases so similar in their facts, in this regard, as that the decision of the one will necessarily control the decision of the other.

It is probably true, as counsel for the defendant stated, "that the difficulty in this case seems to grow out of the fact that the point at which the plaintiff was able to use his sense of sight was much closer than that in any case where the duty of the traveler has been considered by the courts of our state."

There is one case cited by the defendant to which we desire briefly to refer. It is undoubtedly the strongest authority cited on that side, and the one more nearly approaching in its facts, the case before the court, than any of the others.

It is the case of *P. & R. R. Co. v. Peebles*, 67 *Fed.* 591, 14 *C. C. A.* 555. We will not attempt to give the material parts of the testimony, other than that "there was a clear view to the cut at a point twenty feet back from the track."

The court in concluding their opinion said:

"If he attempted to cross the track under these circumstances, without taking any precaution for his own safety, he certainly took the risk of his life in his own hands; and from the proofs but one satisfactory conclusion results—that he did not look or listen for the train. As we have seen, others, under less favorable conditions, heard it; and the presumption is overpowering that, if he had listened for it (waiving the question whether the whistle was blown in time), he could have heard the rumble and roar of the train, which the plaintiff's witnesses all heard; and, if he could not see it while his vision was obstructed by the toolhouse, he certainly had the opportunity of looking for it before he reached

the track. To our mind it is clear that the accident would not have happened had the decedent observed the due measure of care which the situation demanded of him. There was contributory negligence, and the defendant was entitled to binding instructions."

But in that case there were two circumstances that distinguish it from the present one: (1) It does not appear that the deceased stopped and listened at any point near the crossing; and (2) it does appear "that he had the opportunity of looking for the train before he reached the track," and it was therefore clear to the court that the accident would not have happened if the decedent had observed due care. The following are some of the other cases cited by the defendant, but we think none of them are so close to the one at bar as that to which we have referred: *Railroad Co. v. Lacey*, 94 *Va.* 460, 26 *S. E.* 834; *McClure v. Railroad Co.*, 41 *Pa. Super. Ct.* 227; *Shufelt v. Railroad Co.*, 96 *Mich.* 327, 55 *N. W.* 1013; *Railroad Co. v. Righter*, 42 *N. J. Law* 181; *Walsh v. Pa. R. R. Co.*, 222 *Pa.* 164, 70 *Atl.* 1088; *Leithead v. Railroad Co.*, 78 *N. J. Law* 148, 72 *Atl.* 453; *Weiss v. Railroad Co.*, 76 *N. J. Law* 348, 69 *Atl.* 1087; *Railroad Co. v. State*, 104 *Md.* 659, 65 *Atl.* 434; *Southern R. R. v. Jones*, 106 *Va.* 412, 56 *S. E.* 155; *Stokes v. Southern R. R. Co.*, 104 *Va.* 819, 52 *S. E.* 855; *Smith v. Railroad Co.*, 137 *Wis.* 97, 118 *N. W.* 638; *Railroad Co. v. Ackerman*, 144 *Fed.* 959, 76 *C. C. A.* 13; *Smith v. Railroad Co.*, 87 *Me.* 343, 32 *Atl.* 967; *Mankewicz v. Railroad Co.*, 214 *Pa.* 387, 63 *Atl.* 604, and many other Pennsylvania cases.

There is one case cited by the plaintiff below to which we wish to make particular reference, and that is *Winstanley v. Chicago etc., R. R. Co.*, 72 *Wis.* 375, 39 *N. W.* 856. In the course of a very clear and able opinion the court said:

"The only remaining error complained of is the refusal of the court to direct the jury to render a verdict for the defendant. This brings us to a consideration of the facts and the merits of the case. The main reasons given why the court should have taken this case from the jury, and directed a verdict, are that the deceased, when his team was about four feet from the rail of the track, could have seen, had he looked in that direction, the

approaching train in time to have stopped his team; and he did not look, or he would have stopped his team before they got so near the track.

"That a person approaching a railroad crossing should look and listen, if looking and listening would do him any good in protecting him from injury, before attempting to cross over, has been as persistently insisted upon by this court as by any court in the country or in England. It is not common care and prudence for such a person to drive on heedlessly, without taking such reasonable and natural precautions to secure his safety. If, for a considerable distance from the crossing, his view towards an approaching train is cut off by buildings, embankments, or other obstructions, greater caution should be used, by listening or by doing other things which a reasonably prudent man would be likely to do, in order to ascertain whether a train was so near the crossing as to make dangerous or hazardous his attempt to cross over in front of it. What such other things are must be determined by the facts of that particular case, and they cannot be classified by any general rule. If the view of such a person is cut off until he is near the crossing, and he could then, by looking, see the danger in time to stop or in any way avoid a collision with the train, he should do so, and as a general rule it would be such a want of common care and prudence as to preclude his recovery of damages resulting from such a cause if he does not do so. In any case, it would be heedless and reckless to drive or go on without any precautions for his safety. These principles have been urged and made especially emphatic, and carried to the utmost extent consistent with reason, in many cases in this court.

"The deceased and his fellow workman jumped into the wagon, headed towards the crossing, only about twenty-six feet away. He drove upon a walk—probably a fast walk. Had he looked or listened he could not have seen or heard the train until his horses' heads were within about four feet of the rail on the crossing. Had he looked then, instantly, he would have seen the front box car within a very few seconds from the crossing. It was almost right upon him. It is quite too strict a duty to have required him to look instantly, when he could have first seen the first

corner of it, as it appeared, moving in sight, just past the corner of the building, and here an instant counts much. The horses, after that could take but a step to bring their heads over the track and feet near the rail, where the car caught upon the collar of the nearest horse. The team could scarcely have been said to be on the track. They did stop; at least, they did not go further forward. The lips of the driver are sealed in death, and we cannot tell what he saw or when he looked, or how the circumstances of this most critical situation and condition of danger appeared to him. He evidently saw his danger, and it would be natural that he would make every effort to escape it. Did he see the train before his horses' heads were over the track, and while they were within those four feet of the rail? Did he look? Did he stop his team as soon as he could after seeing the train, or try to do so? Who can say? Who knows? We cannot know that he did not try to stop his team, and that he did not look as soon as he could reasonably, after looking would be of any use. The emergency is too great and the danger too sudden for deliberation, and for aught we know he did make every reasonable effort to stop his team in time. His culpable negligence under such circumstances must be clearly shown to defeat his action. Does it clearly appear, or was it clearly shown by the evidence we have? We think not. The peculiar circumstances of this emergency are too much shrouded in doubt and uncertainty to now cooly sit in judgment over the deeds of omission or commission of the unfortunate driver of that team, and determine with any certainty whether he did too little or too much within such narrow limits of time and space.

"This is very far from such a case of clear culpable negligence as the court, as a matter of law, would be warranted in so declaring, and no case has been cited of sufficient analogy in its facts to be authority for so holding. On the question of the contributory negligence of the deceased in such a case the verdict of a jury ought to be taken as conclusive. 'If the inferences to be drawn from the testimony are doubtful or uncertain, the question of negligence is for the jury'."

It will be observed that in the Wisconsin case the driver of the wagon did not look or listen at all until his horses' heads were

25 Del.]     P., B. & W. R. R. Co. vs. Buchanan.     249

Opinion.

within four feet of the rail; and moreover, he was killed, and could not testify as to what he did or how the accident happened. It was, therefore, not so strong a case for the plaintiff as the case here, where the plaintiff testified that he stopped about forty feet from the track and looked and listened, and did not, and could not, see the train in time to avoid the accident.

In *Guhl v. Whitcomb*, 109 *Wis.* 75, 85 *N. W.* 144, 83 *Am. St. Rep.* 889, the court said:

"The rule stated in these decisions is that the duty to look and listen is absolute where the opportunity exists. In most of these cases the exception in favor of reasonable diversion of attention was urged, and its applicability was apparent if those words be used in the sense now contended for by respondent. It is considered, therefore, that all exception to the duty to look and listen at a railroad crossing resulting from diversion of attention has been repudiated by this court except in cases where the attention is so irresistibly forced to something else as to deprive the traveler of the opportunity to perform that duty. This rule is general, and applies as well to the driver of a team as to the foot passenger, with the difference, however, that it is much more difficult to conceive circumstances surrounding the latter which can at once deprive him of the opportunity to observe and the ability to stop short of the actual peril. With him a single step, wholly under his control, crosses the danger line. With the driver, many things may complicate the situation—momentum, conduct of horses, multiplication of perils, and the like."

It would extend this opinion beyond reasonable limits if we should comment upon, or quote from, other cases so carefully and industriously collected and briefed by counsel on both sides.

The following are some of the many cases cited by the plaintiff: *Smith v. Chicago, etc., R. R. Co.*, 137 *Wis.* 97, 118 *N. W.* 638; *Kenney. v. Hannibal, etc., Railroad Co.*, 105 *Mo.* 270, 16 *S. W.* 837; *Penna. R. R. Co. v. Righter*, 42 *N. J. Law* 180; *Plummer v. Eastern R. R. Co.*, 73 *Me.* 591; *Chicago R. R. Co. v. Hedges*, 105 *Ind.* 398, 7 *N. E.* 801; *Chicago & N. E. R. Co. v. Miller*, 46 *Mich.* 532, 9 *N. W.* 841; *Pearce v. Humphreys* (*C. C.*) 34 *Fed.* 282; *Kellogg v. Railroad Co.*, 79 *N. Y.* 72; *Hubbard v. Boston & Albany R. R. Co.*,

162 *Mass.* 132, 38 *N. E.* 366; *Hicks v. Railroad Co.*, 164 *Mass.* 424, 41 *N. E.* 721, 49 *Am. St. Rep.* 471; *Elston v. Railroad Co.*, 196 *Pa.* 595, 46 *Atl.* 938; *Cromley v. Pa. R. R. Co.*, 208 *Pa.* 445, 57 *Atl.* 832, and other cases.

We have examined all of the authorities cited, but such examination has not been helpful in the decision of this case, for the reason that such decision depends so largely upon the facts in the case. We have not, of course, found any exactly like the one before us.

It may be said, however, as a result of such examination, that we have found practically all of the cases cited by the defendant below to have one feature which distinguishes them from the case we are considering, and that is: *the clear conviction or belief of the court that the plaintiff had the opportunity or ability to see the approaching train in time to avoid the accident if he had exercised due care in the use of his senses.*

Such a feature may be a very proper test in deciding whether in cases like this, the question of contributory negligence should be determined by the court as a matter of law, or by the jury as a question of fact.

This court in the *Reed case* above referred to, when speaking of contributory negligence said: "And the court will not decide it as one of law, * * * if the conclusion to be drawn from the evidence is doubtful and uncertain." It must clearly appear before the court can so find, as a matter of law.

We will endeavor to apply this rule, or test, to the present case.

In the first place, it is manifest from the evidence that the plaintiff was not proceeding rapidly and recklessly before he reached the crossing. Neither was he "racing with the locomotive" as the court suggested in the *Reed case*. On the contrary it is undisputed that the plaintiff stopped his team about forty feet from the crossing and listened, his view being entirely obstructed. He heard nothing, and continued on—his horse in a walk. Forty feet is a very short distance along the highway, and the place where the plaintiff stopped and listened, therefore, was very near the crossing. And he was in a wagon and not on foot. Certainly it could not be contended that the plaintiff was *clearly* negligent

before he had reached the point where the obstruction ended, and he could see the tracks north of the crossing.

Then the question is, was he clearly negligent after he reached such point? Unquestionably he was, if he could, by the exercise of due care and caution, have looked and seen the train in time to avoid the accident. It was his duty, before driving upon, or attempting to cross, the tracks, to look and see if a train was coming, if he had the opportunity to do so, and if by so doing he could have protected himself from injury. And, as was said in the *Reed case*, if he failed to exercise such ordinary care, that is, to look and listen, whatever danger he could thereby have discovered and avoided, he incurred the peril of, if he proceeded, and for an injury arising under such fault, he was left without remedy. He cannot recover for injuries to which his own negligence proximately contributed, or which, by the exercise of due and ordinary care he could have avoided.

Is it clear that the plaintiff could, by the exercise of ordinary care, have seen the train as he approached the crossing, in time to have avoided the accident?

He testified as follows: "When I got to where I could see, the train was right there, and the first thing I saw was the train. It was right on me, when I saw it. It was just when the horse stepped on the track the train was there; it was just far enough in the open space so that I could see. That is all I can say. I gave the horse a sudden jerk with my right hand." In reply to the question, "Do you know what the distance was from your horse's head back to your seat in the wagon?", the plaintiff said: "I measured a horse similar to the one I drove, and it was sixteen feet, to the front of the seat where I was sitting."

The testimony of the plaintiff was very materially corroborated by the engineer of the train, a witness called by the defendant, who testified that he did not see the plaintiff, "only when he struck the wagon." He saw the horse only when the train was about two hundred feet from the crossing, the horse being then about the end of the hedge or at the telegraph pole. He just saw his head at that time going up like as if a man pulled his horse back right quick, and could not see the body of the horse, the

wagon or the driver on account of the obstructions. "The horse kept on coming. I suppose he could not stop the horse right on the spot."

It appears, therefore, from the testimony of these two witnesses that when the plaintiff reached a point where he could see the train it was right there—the head of his horse within less than three feet of the nearest rail, for the side of the engine projects somewhat beyond the rail. It also appears that the plaintiff jerked his horse's head, his purpose presumably being to stop him. The horse did not stop, but we do not know whether it was because of fright, and the plaintiff's inability to control him, or not.

We do not think it is *clear* from the testimony that the plaintiff could, under the conditions and circumstances existing at the time, by the exercise of reasonable and due care, have avoided being injured.

We do not say the plaintiff below was not guilty of contributory negligence which proximately contributed to his injuries, but we do say it was not so clearly shown by the evidence as to justify the court in holding as matter of law that there was such negligence. Whether there was or not was a question proper to be submitted to and determined by the jury under all the evidence in the case.

There are three other assignments of error to be considered, although they were not strongly insisted upon or argued. They are the second, third and fourth. The second is: That the court erred in refusing to instruct the jury as follows:

"If, as a person approaches a railroad crossing his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them, and if he does not look and for this reason does not see an approaching train until it is too late to avoid a collision, and he is thereby injured, he is guilty of negligence and could not recover therefor."

The prayer upon which this assignment of error is based is taken from a charge delivered in the case of *Knopf v. Railroad Co.*, 2 *Penn.* 392, 46 *Atl.* 747, and the instruction given was a very proper and appropriate one under the evidence in that case. It

would not have been improper or inappropriate in the present case.

The question is was it reversible error for the court to refuse or fail to charge the jury in the very language embodied in the prayer?

We think it was not error if the court charged substantially as the defendant requested. Did they so charge?

The court said: "If a person drives up to a railway crossing and upon it, not only without stopping but without looking out and listening to ascertain if any cars are approaching, and a collision and injury occurs to him from a passing train, which would have been prevented had the person so injured exercised the proper and ordinary prudence, care and caution mentioned, such person would be guilty of contributory negligence and could not recover."
*   *   *   "If the negligence of the plaintiff contributed to or entered into the accident, at the time of the injury the plaintiff would be guilty of contributory negligence and could not recover."
*   *   *   "If you shall believe that the negligence of the plaintiff himself contributed to the injuries complained of, your verdict should be for the defendant."

And the court below further instructed the jury as follows:

"It has been held by the courts of this state that the law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person, approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger, there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own and others' safety and protection; and he is required, at least, to look and listen for an approaching engine or train before venturing to cross the track; and if, as it has been said, he fails to exercise such ordinary care, whatever danger he could thereby have discovered and avoided, he incurs the peril of if he proceeds, and, for an injury arising under such fault, is left without remedy."

The court, therefore, charged the jury that it was the duty of the plaintiff to "look and listen;" that he was guilty of contributory negligence if he failed to perform such duty, and that for any

injury he received, which he could have avoided by the performance of such duty, he would be left without remedy—he could not recover.

Manifestly this means the same as the defendant's prayer. It is just as favorable to the defendant, and must have been clear to the jury.

The defendant's third and fourth assignments of error are the same in principle, and will be considered together.

The error assigned in the third, is that the court below admitted the testimony of a witness with respect to points in the public road at which a train could be seen approaching the crossing, when it appeared that the witness, at the time he made the examination was on foot and not in a wagon, and no train was approaching the crossing.

The error assigned in the fourth, is that the plaintiff was permitted to testify respecting certain tests made by him as to points in the public road at which a train could be seen approaching the crossing, when it appeared that at the time of making said test no train was in fact approaching the crossing.

The defendant's contention is that at the time of such examination and tests the conditions were different from those that existed at the time of the accident, and that the testimony was therefore inadmissible, and prejudicial to the defendant. It is not claimed, however, that there was any change in those things that obstructed the view of the railroad to the north of the crossing. Conditions were the same in that regard. The witness who was on foot when he made his examination testified that nineteen feet west of the track he would have a clear view of a train approaching the crossing from the north. He said in cross examination that there was no train approaching at the time, but he could see up the track.

It seems to us to be quite immaterial whether a train was approaching or not, because if there was a clear view up the track, there would necessarily be a clear view of a train when approaching from that direction.

And, when the examination or tests were made in the open, that is, at a point nineteen feet west of the track, which was

25 Del.]     P., B. & W. R. R. Co. vs. Buchanan.          255

Opinion.

between the obstruction and the nearest rail, it could make no difference whether the observer was on foot or in a wagon. The view would be just as clear to a person in an open wagon as to a person on foot.

The evidence was clearly admissible, subject of course to proper cross examination and comment.

The judgment of the court below is affirmed.